413 S.E.2d 684

**STATE ex rel. Ira DADISMAN, Chairman of the Public Employees Retirement System Association, Inc., Heretofore an Employee of the State of West Virginia, and the West Virginia Association of County Officials, Petitioners/Relators,**

v.

**W. Gaston CAPERTON, as Governor; Keith Burdette, as President of the State Senate, for and on Behalf of Himself and the Other Members of the State Senate; Robert C. Chambers, as Speaker of the House of Delegates, for and on**

Behalf of Himself and the Other Members of the House of Delegates; Charles Polan, as Secretary of Administration, as Director of the Budget and as a Member and Chairman of the Consolidated Public Retirement Board; David A. Haney, as a Member of the Consolidated Public Retirement Board; David L. Wyant, as a Member of the Consolidated Public Retirement Board; James H. Morton, as a Member of the Consolidated Public Retirement Board; Elizabeth Poundstone, as a Member of the Consolidated Public Retirement Board; Tony Lautar, Jr., as a Member of the Consolidated Public Retirement Board; S.S. Satterfield, as a Member of the Consolidated Public Retirement Board; Janet F. Wilson, as a Member of the Consolidated Public Retirement Board; Glen B. Gainer, Jr., as a Member of the Consolidated Public Retirement Board; and Daniel N. Huck, as a Member of the Consolidated Public Retirement Board, Respondents.

No. 20419.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 6, 1991.

Decided Dec. 17, 1991.

Rehearing Denied Feb. 13, 1992.

Jennifer F. Bailey, Hamb, Poffenbarger & Bailey, Charleston, for petitioners/relators.

Mario J. Palumbo, Atty. Gen., Silas B. Taylor, Sr. Deputy Atty. Gen., Charleston, for respondents.

McHUGH, Justice:

The two primary issues in this case invoking the original jurisdiction of this Court are: (1) whether there has been compliance with the particular mandate of this Court set forth in *Dadisman v. Moore*, 181 W.Va. 779, 384 S.E.2d 816 (1989), *as modified on reh'g*, concerning the underfunding of state employer contributions to the then state division of the West Virginia Public Employees Retirement System for four fiscal years; and (2) whether the amendment in 1990 to *W.Va.Code*, 5–10–28 eliminating, for most accounting purposes, the two divisions of that System (the state division and the public employer division for nonstate public employees) is an unconstitutional impairment of the contract between the System and the nonstate employees.

The petitioners/relators in this mandamus proceeding are the chairman of the Public Employees Retirement System Association, Inc., and the West Virginia Association of County Officials. The respondents are the Governor of this state; the President of the West Virginia State Senate and the Speaker of the West Virginia House of Delegates, on behalf of their respective bodies; the Secretary of Administration of this state; and the chairman and each of the other members of the Consolidated Public Retirement Board, which, since July 1, 1991, has administered the Public Employees Retirement System, as well as certain other public retirement plans.

We conclude that the petitioners/relators have failed to show their entitlement to the requested mandamus relief, for the reasons stated below, and, accordingly, we deny the writ.

I

In *Dadisman v. Moore*, 181 W.Va. 779, 384 S.E.2d 816 (1989), *as modified on reh'g* ("*Dadisman I*"), this Court in an original mandamus proceeding found, *inter alia*, that the Public Employees Retirement System ("the PERS") had been "underfunded" by about $80 million during the four fiscal years 1985–86 through 1988–89. This "underfunding" of state employer contributions to the PERS resulted partially from the lack of appropriations and partially from the diversion of appropriations to other purposes. *Dadisman I* required an audit and a determination by an independent actuary as to "whether" the PERS has been rendered actuarially unsound by virtue of that underfunding. 181 W.Va. at 792, 384 S.E.2d at 829. "*If* it is determined that the System [the PERS] is *actuarially*

*unsound,* then the Respondent [Board of] Trustees [of the PERS] must develop an appropriation plan which will return the System to actuarial soundness." *Id.* (emphasis added).[1] *Any* amount necessary to *restore actuarial soundness* was to be prorated over no more than six fiscal years, beginning with the fiscal year 1990–91, and this prorated amount each year was to be included in the Trustees' annual certification to the Governor of the state employer contribution requirements pursuant to *W.Va.Code,* 5–10–32(a) [1961]. "The audit, study and appropriation plan are to be completed within one hundred eighty (180) days of the issuance of this opinion on rehearing." *Id.* The opinion on rehearing was issued on March 17, 1989.

An actuarial report, dated September 8, 1989, and prepared by Thomas J. Cavanaugh, an actuary with Gabriel, Roeder, Smith & Company, was submitted to the Board of Trustees of the PERS. That report, on its face, indicated that the PERS was, at that time, actuarially unsound because a factor in actuarial soundness of a retirement system is the receipt of contributions at the actuarially computed levels, and here significant amounts of required contributions for the fiscal years 1985–86 through 1988–89 had not been made.

On the other hand, Mr. Cavanaugh has submitted an affidavit in this case which states that his September, 1989 opinion that the PERS was then actuarially unsound

> was based on the then-recent four-year history of failure on the part of the State of West Virginia to make the contributions required by law, and was not based on any determination that the existing assets of the System plus the required contribution rate (if maintained in the future) would or would not be able to meet the anticipated liabilities of the system *as they arose.*

(emphasis added)

Finally, Mr. Cavanaugh opined that the PERS as a whole, or the former state division thereof separately, was actuarially sound as of February, 1991, when he spoke before the PERS Board of Trustees, regardless of the four years of underfunding. This was so, according to Mr. Cavanaugh, because the unfunded actuarial liability of the former state division of the PERS will, *assuming* the continuation of contributions and investment income at certain levels, be amortized, that is, be fully funded eventually, over a period of time considered very reasonable by most actuaries, specifically, about sixteen years after June 30, 1989.

The September, 1989 actuarial report was filed with this Court in October, 1990. Also filed with this Court at the same time was the statutorily required triennial actuarial valuation of the PERS as of June 30, 1989, prepared by Peter D. Verne, an actuary with A. Foster Higgins & Co., Inc., and submitted to the Board of Trustees on November 6, 1989. That actuarial report suggested a sixteen-year amortization period for the unfunded state division actuarial liability.

Triennial reports are not intended to address actuarial soundness per se of the PERS. The author of the November 6, 1989, actuarial report, Mr. Verne, has, however, submitted an affidavit in this case, consistent with his address before the PERS Board of Trustees in February, 1991, to the effect that the PERS as a whole, or the state division thereof separately, was in fact actuarially sound as of June 30, 1989, without repayment of the curtailed contribution amounts. He opined that the unfunded state division actuarial liability was due in small part to the temporary, now expired, early retirement incentive program. He also opined that the level of funding was such that "few municipal, state, or even corporate plans enjoy this [high of a] level of funding."

Due to the confusion over the apparent conflict between the September, 1989 and November, 1989 actuarial reports described above, and due to the pendency of a study

---

**1.** Prior to July 1, 1991, the PERS was administered by its Board of Trustees. Since that date, the PERS has been administered by the Consolidated Public Retirement Board. *W.Va.Code,* 5–10–5 [1990], 5–10D–1(a)–(b) [1990].

of all public retirement systems by a retirement task force, the former PERS Board of Trustees took no action to certify any supplemental *Dadisman I* appropriations to the Governor for inclusion in his 1990–91 budget.

During the third 1990 extraordinary session of the legislature, petitioner/relator Ira Dadisman expressly did not contest the recommendation of a retirement task force that the legislature eliminate the accounting divisions between the state and nonstate components of the PERS. *W.Va. Code,* 5–10–28 [1961] subsequently was amended during that third 1990 extraordinary session in accordance with that recommendation.

In December, 1990, a senior assistant attorney general advised the PERS Board of Trustees that, due to the actuarial soundness of the PERS, no supplemental *Dadisman I* appropriations were necessary. However, at a meeting of such Board on February 7, 1991, attended by the petitioners/relators herein, the PERS Board of Trustees passed resolutions condemning the consolidation of the state and nonstate divisions and certifying to the Governor a request to appropriate the first of the six recompensation installments calculated by the September, 1989, Gabriel, Roeder report.

Prior to the certification being transmitted to the legislature, a special meeting of the PERS Board of Trustees was held on February 26, 1991. At that meeting the two actuaries mentioned earlier, Mr. Cavanaugh and Mr. Verne, stated that the PERS as a whole, or the former state division thereof separately, was actuarially sound, without recompensation for past underfunding, as long as the state employers' contributions for each current year are made as actuarially calculated by the Board administering the PERS.

On March 4, 1991, the Governor transmitted the PERS Board of Trustees' February 7, 1991 certification to the legislative leadership, but included a letter stating that, in light of the two actuaries' opinions that the PERS was actuarially sound, such

Board's certification was inappropriate and improper under *Dadisman I.*

The State, since *Dadisman I,* has, on the record before us, complied with the *regular* appropriation requirements for employer contributions pursuant to *W.Va.Code,* 5–10–32 [1961]. *But see infra* note 5.

The legislature has not, however, appropriated any *supplemental* funds to repay specifically the past underfunding of state employer contributions.

The petitioners subsequently brought this proceeding, styled as a "motion for contempt," seeking, among other things, that (1) the past underfunding be repaid to the PERS and (2) that *W.Va.Code,* 5–10–28 [1990] be declared unconstitutional as an impairment of contract. This Court deemed the "motion for contempt" to be a petition for a writ of mandamus and issued a rule to show cause why the mandamus relief should not be awarded. The Court has heard oral argument of counsel for the parties and has reviewed the petition, the response, the exhibits and the written memoranda of law submitted by counsel for the parties.

## II

■ The petitioners/relators contend that *Dadisman I* requires unconditionally the repayment of the past underfunding of state employer contributions. We disagree.

The original *Dadisman I* opinion stated:

The Respondent Trustees are hereby mandated to engage an independent actuary . . . to conduct an audit and a study to determine exactly how much the System has been underfunded in the past four years and how much money should be returned to the PERS. The Respondent Trustees must then develop an appropriation plan which will return to the System the lost appropriations and interest thereon.

In contrast, the *Dadisman I* opinion as modified on rehearing contains the following materially changed mandate of this Court:

The Respondent Trustees are hereby mandated to engage an independent actuary to conduct an audit and study to determine pursuant to W.Va.Code, 5–10–31, *whether* the System has been rendered *actuarially unsound* through the underfunding of the past four years. *If* it is determined that the System is *actuarially unsound*, then the Respondent Trustees must develop an appropriation plan which will return the System to *actuarial soundness.*

181 W.Va. at 792, 384 S.E.2d at 829 (emphasis added). Obviously, the modified opinion *conditionally* requires repayment of the past underfunding: only if the System had been rendered actuarially unsound and, if so, the amount of the repayment was only to be such as to return the System to actuarial soundness.[2]

Initially the opinion of the actuaries was divided as to whether the System had been rendered actuarially unsound as of June 30, 1989. However, the actuaries now believe unanimously that the System was actuarially sound as of that date and currently, whether the System is viewed as a whole or the former state division of the System is viewed separately.

Significantly, we observe that the petitioners/relators have presented no evidence in opposition to the evidence of the respondents. For example, the petitioners/relators have not proposed any taking of depositions or any reference to a special master, pursuant to Rule 14(d)-(e) of the *West Virginia Rules of Appellate Procedure,* to challenge the actuarial methodologies of Mr. Cavanaugh or Mr. Verne or to otherwise develop the evidence. We obviously must rule upon the factual record before us.

Accordingly, this Court holds that where the mandate of an opinion of this Court requires a determination of whether the Public Employees Retirement System has been rendered actuarially unsound by past underfunding and, if so, requires appropriations which will return the System to actuarial soundness to be made, such appropriations are not necessary if it is determined that the System has not been rendered actuarially unsound by that underfunding.

Nonetheless, this Court stresses that our opinion, like the opinions of the actuaries submitted herein, is hinged upon the assumption that there will continue to be timely and complete funding and proper application of all employer contributions to the employer accumulation fund of the PERS, without diversion to unauthorized purposes. *See W.Va.Code,* 5–10–40 [1961] (all assets of PERS shall be used for sole purpose of meeting disbursements for annuities and other payments authorized by "this article" and shall be used for no other purpose whatsoever). *W.Va.Code,* 5–10–38 [1961] (limiting types of investments for PERS moneys). This Court would order appropriate relief, including supplemental funding to restore underfunding or diverted funds, should any future violations be established which affect actuarial soundness of the PERS.

### III

The petitioners/relators, particularly the West Virginia Association of County Officials, also contend that the 1990 amendment to *W.Va.Code,* 5–10–28, constitutes an unconstitutional impairment of contract. We disagree.[3]

The 1990 amendment to *W.Va.Code,* 5–10–28 eliminated, for most *accounting* purposes, the two divisions of the PERS theretofore existing for such purposes, specifically, the state division and the public em-

---

**2.** The petitioners/relators point to syllabus point 23 of *Dadisman I,* which says: "The amounts expropriated from the retirement trust funds for purposes other than those for which the funds were collected constitute a public debt owed by the state to the trust funds, and such expropriation must be remedied by recompense through appropriation." The actual mandate of the Court in our modified opinion, however, is as quoted in the text immediately above. *Cf.*

*Summers County Citizens League, Inc. v. Tassos,* 179 W.Va. 261, 266, 367 S.E.2d 209, 214 (1988) (syllabus point must be read in light of facts in body of opinion).

**3.** *W.Va.Const.* art. III, § 4 provides, in relevant part: "No ... law impairing the obligation of a contract[ ] shall be passed." (comma deleted at brackets) *See also U.S. Const.* art. I, § 10.

ployer division for nonstate public (county, municipal, etc.,) employees. Except for calculating the rate of contributions, which is still done separately for the two former divisions, the 1990 version of *W.Va.Code*, 5–10–28 calls for unified, rather than divisional, *accounting* for all of the assets of the PERS. Even under the former (1961) version of *W.Va.Code*, 5–10–28, all of the assets of the PERS were "pooled" together for investment purposes.[4]

The former state division of the PERS, viewed separately, has an unfunded actuarial liability. According to the actuaries herein, however, most public or private pension plans have unfunded actuarial liabilities amortized over about thirty years. The former public employer division for nonstate, or county, municipal, etc., employees, viewed separately, has a much larger surplus which more than offsets the state unfunded amount. The petitioners/relators, particularly the West Virginia Association of County Officials, claim that the surplus allegedly "belonging to" the nonstate public employees is being used, under the 1990 version of *W.Va.Code*, 5–10–28, to deprive them of part of "their" surplus, for the benefit of the former state division. This claim is without merit.

First, even under the former (1961) version of *W.Va.Code*, 5–10–28, the assets of the single Public Employees Retirement System were not to be segregated between the two divisions, but were, instead, owned by the System as a whole. *See supra* note 4 (last sentence of 1961 version). Second, no portion of the former public employer division's surplus has been "diverted" to the state division to make pension benefit payments as they have become due, because the PERS as a whole, *or the former state division thereof separately*, has at all times, according to this record, continued to be actuarially sound. *See* syl. pt. 19, *Dadisman v. Moore*, 181 W.Va. 779, 384 S.E.2d 816 (1989) (payment of statutorily promised pension *benefits, on maturity*, is a general and moral obligation of the state).

This Court, in syllabus point 4 of *Shell v. Metropolitan Life Insurance Co.*, 181 W.Va. 16, 380 S.E.2d 183 (1989), held:

In determining whether a Contract Clause violation has occurred, a three-step test is utilized. The initial inquiry is whether the statute has substantially impaired the contractual rights of the parties. If a substantial impairment is

---

**4.** The 1990 version of *W.Va.Code*, 5–10–28 provides:

For financing and accounting purposes, the West Virginia public employees retirement system shall consist of only one division, including in combination the participating state employees and participating public employees who are not state employees. Unified accounting of the retirement system transactions shall be maintained for all the assets of the system. The retirement system funds shall be (1) the members deposit fund, (2) the employers accumulation fund, (3) the retirement reserve fund, (4) the income fund, and (5) the expense fund. Nothing contained in this section or any prior provision of law shall be interpreted to mean that any assets of the system, regardless of their origin or date of receipt, are to be in any manner segregated or insulated for the purposes of either paying benefits due or determining or establishing accounting or actuarial methodologies or functions utilized by the retirement system. The amendments to this section adopted during the third extraordinary session of the 1990 legislative session shall not be construed to limit the powers of the board relating to contributions to or benefits of the public employ-

ees retirement system, and any and all powers residing in the board previously administering the public employees retirement system shall be preserved.

The former (1961) version of *W.Va.Code*, 5–10–28 provided:

For financing and accounting purposes the West Virginia public employees retirement *system* shall consist of two divisions, namely, the state division for the participation of state employees and the public employer division for the participation of the public employees who are not state employees. Separate accounting of the retirement *system* transactions shall be maintained for each division showing the equities of each division in the assets of the *system*. The retirement *system* funds shall be (1) the members deposit fund, (2) the employers accumulation fund, (3) the retirement reserve fund, (4) the income fund, and (5) the expense fund. Each such fund shall be maintained by the board of trustees for the state division and the public employer division, respectively. *Nothing contained in this section shall be interpreted to mean that the assets of the system are to be segregated between the division[s] or the funds.*

(emphasis added).

**634**

shown, the second step of the test is to determine whether there is a significant and legitimate public purpose behind the legislation. Finally, if a legitimate public purpose is demonstrated, the court must determine whether the adjustment of the rights and responsibilities of contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption.

Thus, the first step in determining whether an impermissible contract impairment has occurred is to ascertain whether there has been a substantial impairment of contractual rights. *West Virginia Public Employees Retirement System v. Dodd*, 183 W.Va. 544, 552, 396 S.E.2d 725, 733 (1990). In the present case *no* impairment of contractual rights has occurred, as the System, rather than each division, has at all times owned all of the assets.

Accordingly, we hold that the 1990 amendment to *W. Va. Code*, 5–10–28 eliminating, for most accounting purposes, the two divisions of the Public Employees Retirement System previously existing only for such purposes, specifically, the state division and the public employer division, does not constitute an unconstitutional impairment of the contractual rights of the former public employer division's beneficiaries or retirants, for the System has always owned all of the assets.

### IV

The petitioners/relators have not shown their entitlement to the other requests for mandamus relief, and these requests merit only very brief discussion.

First, the petitioners/relators have failed to articulate, much less prove, which state or federal constitutional provision was violated by the statute, *W. Va. Code*, 5–10D–1(c) [1990], creating and establishing the membership of the Consolidated Public Retirement Board.

Second, the petitioners have failed to show why the payment of Mr. Dadisman's

reasonable attorney's fees incurred in prevailing in *Dadisman I* should not have been charged against the expense fund of the PERS. *W. Va. Code*, 5–10–37 [1961] provides, in relevant part, that "[t]he expense fund shall be the fund from which shall be paid the expenses incurred in the administration of the retirement system." The *Dadisman I* litigation inured to the benefit of the PERS trust beneficiaries, and the reasonable legal expenses "incurred [in essence] in the administration of the retirement system" may, therefore, be charged against the expense fund of the PERS trust assets. On the other hand, the litigation in this unsuccessful mandamus proceeding has not inured to the benefit of the PERS trust beneficiaries and, therefore, the legal expenses of the petitioners/relators herein are not chargeable properly against the expense fund of the PERS.

Finally, the petitioners/relators should follow the normal channels, including, if necessary, filing a Freedom of Information Act request, pursuant to' *W. Va. Code*, 29B–1–3 [1977], in order to obtain any unfurnished information about the status of the delinquent employer contributions owed in June, 1989, by the West Virginia Department of Human Services and about the status of the refund of employer contributions sought by the United States Department of Health and Human Services.[5]

▪ With respect to each of these requests for mandamus relief the petitioners/relators have failed to show their entitlement thereto based upon the tripartite test set forth in syllabus point 2 of *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969): "A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." *Accord, State ex rel. Dilley v.*

---

5. While the record establishes that there were delinquent employer contributions owed by the West Virginia Department of Human Services in June, 1989, the record does not establish that these contributions are still delinquent.

*West Virginia Public Employees Retirement System,* 184 W.Va. 570, 576, 401 S.E.2d 916, 922 (1991); syl., *Tenney v. Board of Education,* 183 W.Va. 632, 398 S.E.2d 114 (1990). Moreover, the clear legal right to the mandamus relief may not be established in the mandamus proceeding itself. Syl. pt. 1, *Kucera.*

### V

Based upon all of the above, this Court declines to award the writ of mandamus.

Writ denied.