460 S.E.2d 747 (1995)
194 W.Va. 501
WEST VIRGINIA EDUCATION ASSOCIATION; Kayetta Meadows as President, et al., Appellees,
v.
The CONSOLIDATED PUBLIC RETIREMENT BOARD; Glen Gainer, II, Auditor, and Gaston Caperton, Governor, as Members of The Consolidated Public Retirement Board, Appellants,
Keith Burdette, President of the State Senate, et al.; and Robert C. Chambers, Speaker of the House of Delegates, et al., Appellants.
Eulah May FLEMING, a Member of Concerned Principals and Teachers' Association, etc., Appellee,
v.
Gaston CAPERTON, Governor, et al., Appellees.
WEST VIRGINIA EDUCATION ASSOCIATION; Kayetta Meadows as President, et al., Appellees,
v.
The CONSOLIDATED PUBLIC RETIREMENT BOARD; Glen Gainer, II, Auditor, and Gaston Caperton, Governor, as Members of the Consolidated Public Retirement Board; Keith Burdette, President of the State Senate, et al.; and Robert C. Chambers, Speaker of the House of Delegates, et al., Appellants.
Eulah May FLEMING, a Member of Concerned Principals and Teachers' Association, etc., Appellee,
v.
Gaston CAPERTON, Governor, et al., Appellees.
WEST VIRGINIA EDUCATION ASSOCIATION; Kayetta Meadows as President, et al., Appellees,
v.
The CONSOLIDATED PUBLIC RETIREMENT BOARD; Gaston Caperton, Governor, as a Member of the Consolidated Public Retirement Board; Keith Burdette, President of the State Senate, et al.; and Robert C. Chambers, Speaker of the House of Delegates, et al., Appellees,
Glen Gainer, Auditor, and as a Member of the Consolidated Public Retirement Board, Appellant.
Eulah May FLEMING, a Member of Concerned Principals and Teachers' Association, etc., Appellee,
v.
Gaston CAPERTON, Governor, et al., Appellees.
WEST VIRGINIA EDUCATION ASSOCIATION; Kayetta Meadows as President, et al., Appellees,
v.
Glen GAINER, II, Auditor, and Gaston Caperton, Governor, as Members of the Consolidated Public Retirement Board; Keith Burdette, President of the State Senate, et al.; and Robert C. Chambers, Speaker of the House of Delegates, et al., Appellees,
The Consolidated Public Retirement Board, Appellant.
Eulah May FLEMING, a Member of Concerned Principals and Teachers' Association, etc., Appellee,
v.
Gaston CAPERTON, Governor, et al., Appellees.
Nos. 22648 to 22651.
Supreme Court of Appeals of West Virginia.
Submitted June 27, 1995.
Decided July 13, 1995.
*750 Webster J. Arceneaux, III, Charleston, for West Virginia Educ. Ass'n and Kayetta Meadows.
Kenneth E. Webb, Jr., Charleston, for The Consolidated Public Retirement Bd.
M.E. Mowery, Jennifer Walker, Charleston, for Keith Burdette and Robert C. Chambers.
Robert Bland, Charleston, for Eulah May Fleming.
Darrell V. McGraw, Jr., Atty. Gen., Silas B. Taylor, Sr. Deputy Atty. Gen., Charleston, for Glen Gainer, II, Auditor.
Jan L. Fox, Charleston, for Gaston Caperton, Governor. *748
*749 RECHT, Justice:

I

INTRODUCTION
In 1989, the West Virginia Education Association, Kayetta Meadows, President of the West Virginia Education Association and an *751 active teacher member of the Teachers Retirement System, Charles Moses, a retired member of the Teachers Retirement System, and Eulah Mae Fleming, a member of Concerned Principals and Teachers Association of West Virginia Teachers Retirement System (hereinafter petitioners) filed separate actions in the Circuit Court of Kanawha County[1] alleging that the State of West Virginia through Governor Gaston Caperton, Earl Ray Tomblin,[2] President of the State Senate for and on behalf of himself and the other members of the State Senate, and Robert C. Chambers, Speaker of the House of Delegates for and on behalf of himself and the other members of the House of Delegates, Glen Gainer, Auditor and the members of the Consolidated Public Retirement Board (hereinafter respondents) had administered the Teachers Retirement System in an actuarially unsound manner contrary to the sanctions contained in W.Va. Const. art. III, § 4, which prohibits any law impairing contractual obligations.
On April 21, 1994, the Circuit Court of Kanawha County entered a final order: (1) finding a writ of mandamus was appropriate; (2) converting a temporary injunction into a permanent injunction restraining the payment of monies from the Teacher Retirement System to the Public Employees Insurance Agency (PEIA); (3) dismissing the civil action, without prejudice, with leave to reactivate upon the recurrence of specified events; and (4) awarding attorneys fees and expenses to the petitioners. Respondents appeal that order.

II

HISTORICAL OVERVIEW OF THE STATE TEACHER RETIREMENT SYSTEM
The "State Teacher Retirement System" was created in 1941 by the West Virginia Legislature pursuant to W.Va.Code 18-7A-1 (1941) et seq.[3] By 1994, the membership of the West Virginia Teachers Retirement System was composed of 33,262 active members, 21,992 retirees and beneficiaries and 5,943 terminated members.[4]
The Teacher Retirement System is divided and administered in five separate trust funds: (a) Teacher Accumulation Fund,[5] (b) Employers Accumulation Fund,[6] (c) Benefit *752 Fund,[7] (d) Reserve Fund,[8] and (e) Expense Fund.[9]W.Va.Code 18-7A-18 (1993).
The original intent of the Teachers Retirement System was that funds from the Teachers Accumulation Fund and matching Employers Accumulation Fund would not be dispersed until the person retires, dies or in the case of Teachers Accumulation Fund, a person withdrew their money. W.Va.Code 18-7A-18 (1955) and W.Va.Code 18-7A-23 (1986).
However, in 1984, the legislature expressly authorized expenditure of teacher and employer monies to pay for current pension benefits.[10]W.Va.Code 18-7A-18(c) (1993) was amended to read:
Any deficit occurring in the benefit fund which is not automatically met by payments to that fund, as provided for by this article, shall be met by additional transfers from the employers accumulation fund and, if necessary, by transfers from the teachers accumulation fund.
As will be seen, this amendment to W.Va. Code 18-7A-18(c) (1993) established the environment permitting an unrestricted utilization of retirement funds and proved lethal to the financial health of the Teachers Retirement System.
Between 1985 and 1988, the Governor did not request adequate appropriations and the legislature only appropriated funds in the amount that was requested by the Governor. In Fiscal Year (FY) 1985-86 the 6.0 percent matching contribution should have been $46,000,000, but only $40,500,000 was requested and appropriated. In FY 1986-87, $49,000,000 should have been appropriated and yet only $25,210,387 was appropriated. In FY 1987-88, $50,000,000 should have been appropriated and only $18,658,387 was appropriated and finally, in FY 1988-89,[11] $50,500,000 should have been appropriated and $23,241,000 was appropriated.[12]
As a result of these inadequate appropriations and pursuant to the 1984 amendment in W.Va.Code 18-7A-18(c), the Teachers Retirement System drew funds from the Teachers Accumulation Fund and the Employers Accumulation Fund to supplement the Benefit Fund for immediate payment of current pension benefits, thereby eliminating any interest accrual on the Teachers Accumulation Fund and Employers Accumulation Fund. Additionally, the inadequate appropriation to the Teachers Retirement System was compounded in 1988 when the legislature permitted the transfer of monies from the Teachers Retirement System to the Public Employees Insurance Agency pursuant to House Bill (H.B.) 4167[13] and Senate Bill (S.B.) *753 5,[14] which authorized payment of retiree health insurance premiums with funds from the Teachers Accumulation Fund and Employers Accumulation Fund.
Accordingly, the net effect of these funding deficiencies and diversions was that as of July 1, 1994, the Teachers Retirement System had an unfunded accrued liability of $3.25 billion![15]

III

PROCEDURAL HISTORY
The momentum of this case has been marked by a series of attempts by all parties, under the aegis of the circuit court, to arrive at a resolution designed to stop the hemorrhaging of the Teachers Retirement System. The culmination of these efforts occurred on March 20, 1994, when the legislature passed S.B. 1000 which was signed by Governor Caperton and became effective from date of passage. W.Va.Code 18-9A-6a(c) (1994).
The petitioners filed these actions in the Circuit Court of Kanawha County on January 25, 1989, seeking a temporary injunction prohibiting the transfer of funds from the Teachers Accumulation Fund and Employers Accumulation Fund to pay insurance premiums to the Public Employees Insurance Agency pursuant to H.B. 4167[16] and S.B. 5.[17] Petitioners also requested a writ of mandamus to compel the respondents to address the unfunded liability of the Teachers Retirement System. Petitioners alleged four statutory abuses of the respondents' administration of the Teachers Retirement System including: (1) Between 1985-88, the Governor[18] failed to request and the legislature failed to appropriate adequate funding general revenues to cover the 6.0 percent state matching contribution to the Employers Accumulation Fund; (2) Teachers Accumulation Fund and Employers Accumulation Fund monies were expropriated to pay for current teacher pension benefits;[19] (3) The Auditor failed to ensure that legislative appropriations were paid into the Employers Accumulation Fund; and (4) Monies were expropriated from the Teachers Accumulation Fund and the Employers Accumulation Fund and the Reserve Fund in order to pay Public Employees Insurance Agency for retired teachers' health insurance benefits. Ultimately, it was the petitioners' contention that the Teachers Retirement System was operated in an actuarially unsound fashion and that their contractually vested property rights were being compromised as a result of the respondents' conduct.
On January 25, 1989, the circuit court issued a rule to show cause why a writ should not be issued ordering respondents to address the problems of unfunded liability. In addition, on January 30, 1989, the circuit court issued a temporary injunction prohibiting respondents from using teacher retirement funds to pay Public Employees Insurance Agency premiums for retired members of the Teachers Retirement System which had the effect of temporarily nullifying the effects of H.B. 4167 and S.B. 5.[20]
On March 15, 1989, Governor Gaston Caperton[21] signed an executive order creating the Governor's Task Force to study public pensions. The proceedings in this matter *754 were stayed by agreement of the parties, pending action by the task force.
An amended Motion for Peremptory Writ of Mandamus was filed on October 12, 1993, regarding the need to act on the unfunded liability of the pension fund. The amended petition was essentially a restatement of the allegations contained in the original petition. The respondents admitted the essential facts in the original petition, which was not rescinded following the filing of the amended petition. However, the respondents maintained that legislative action would be required to provide any sort of adequate remedy to the petitioners and the circuit court was without authority to provide any sort of meaningful relief to petitioners. On November 29, 1993, the circuit court heard arguments on the Motion for Peremptory Writ of Mandamus. The circuit court made no decision relating to the merits of the right to mandamus relief.
On March 20, 1994, during the 1994 First Extraordinary Session, the legislature passed S.B. 1000, which provided a mechanism through the public school support program for supplemental appropriations to be paid into the Teachers Retirement System over the next forty years. W.Va.Code 18-9A-6a(c) (1994). S.B. 1000 amended W.Va.Code 18-9A-6a and was essential in the elimination of the unfunded liability of the teacher retirement system. On March 24, 1994, the respondents informed the circuit court of the passage of S.B. 1000.
Although the core problem associated with the unfunded liability was remediated with the enactment of the S.B. 1000, the circuit court entered a final order on April 21, 1994: (1) finding a writ of mandamus was appropriate; (2) converting a temporary injunction into a permanent injunction restraining the transfer of the Teachers Retirement System funds to the PEIA; (3) dismissing the action, without prejudice with leave to reactivate upon the recurrence of certain events; and (4) awarding attorneys fees and expenses to the petitioners.
Respondents appealed the entry of this final order arguing that: (1) a writ of mandamus is not appropriate because the respondents do not owe a statutory and constitutional duty to petitioners; (2) the circuit court erred in not dismissing the action as moot; and (3) the award of petitioners' attorneys fees and expenses was erroneous.
During oral argument before this Court, all parties agreed with the essence of the conclusions drawn by the actuary retained by the Consolidated Public Retirement Board to the extent that with the enactment of S.B. 1000 "West Virginia is now funding its Teachers Retirement System on an actuarially sound basis."[22]
For reasons that follow, we vacate that portion of the order granting the writ of mandamus as being moot; affirm that portion of the order granting the permanent injunction; and reverse and remand that portion of the order awarding attorneys fees and expenses.

IV

PROPRIETY OF CIRCUIT COURT'S ORDER OF APRIL 21, 1994
This civil action was initiated in the Circuit Court of Kanawha County in order to preserve and protect the Teachers Retirement System from further erosion caused by an ever increasing, unfunded, accrued liability.[23] *755 All parties to this proceeding acknowledge that the reason for the unfunded liability was the failure to appropriate sufficient funds to assure that future benefits could be paid as well as the diversion of funds that were dedicated to the Teachers Retirement System which were being used for other purposes.[24] As we have discussed, the relief that was requested to address the problem associated with the unfunded liability of the Teachers Retirement System was: (1) a writ of mandamus to compel respondents to administer the Teachers Retirement System in an actuarially sound basis;[25] and (2) injunctive measures designed to prevent the respondents from transferring Teachers Retirement System funds to reimburse the Public Employees Insurance Agency for retirees' health insurance.
The threshold issue that commands discussion at this time is whether any relief granted by the circuit court was moot prior to the entry of its April 21, 1994 order. The examination of the mootness issue is required because before the entry of the circuit court's final order, the West Virginia Legislature enacted S.B. 1000 [expressed as W.Va.Code 18-9A-6a(c)], which by all accounts satisfactorily addressed any problems associated with the funding deficiencies of the Teachers Retirement System.
The essential ingredients, which are the subject of this appeal, were stated in the following sections of the circuit court's final order:
(1) That a writ of mandamus is appropriate because the petitioners have a clear legal right to the relief sought; the respondents owe a constitutional and statutory duty to the petitioners; and, there is no other adequate remedy at law;
(2) A permanent injunction enjoining the Teachers Retirement System from making payments to the Public Employees Insurance Agency for health insurance for retirees;
(3) W.Va.Code 18-9A-6a (S.B. 1000) designed to create an unfunded liability allowance, will eliminate the unfunded liability in the Teachers Retirement System over the next 40 years;
(4) That the case be dismissed from the active docket of the Court, without prejudice, with leave for the petitioners to reactivate the case at any future date upon ten days notice by filing a Motion with the Court alleging that the State failed to properly fund the required unfunded liability allowance as required in W.Va.Code 18-9A-6a; and
(5) That the petitioners are entitled to their attorneys' fees and expenses to be paid by the respondents upon the submission of affidavits in itemized statements by counsel for the petitioners reserving the right in the Court to resolve any disputes that may arise in regard to the issue of attorneys' fees and expenses.
Since the mootness doctrine would affect some, but not all, of the various elements of the final order, we will discuss what portion of that order must be vacated by the application of the mootness doctrine and what portions should survive this appeal and chart the future course of the funding requirements of the Teachers Retirement System.

(A) APPROPRIATENESS OF MANDAMUS RELIEF

The centerpiece of the petitioners' prayer for relief is the quest to compel the respondents to preserve and protect what is contended to be a constitutionally shielded pension right created by virtue of W.Va.Code 18-7A-1 (1941) et seq., which established the "State Teachers Retirement System."
This Court put to rest any doubt that may have existed, that the realization and protection of a public employees pension property right is a constitutional obligation of the state. Syllabus Point 18, Dadisman v. *756 Moore, 181 W.Va. 779, 384 S.E.2d 816 (1989) (herein Dadisman I).
We offered in Dadisman I an analysis as to how a pension right created by statute acquires a constitutionally protected status. Dadisman I involved a similar problem relating to the unfunded liability of the Public Employees Retirement System (PERS). The PERS is the general retirement program for public employees in West Virginia and was created by statute in W.Va.Code 5-10-1 (1961) et seq.
We held in Dadisman I that the language of W.Va.Code 5-10-1 (1961) et seq. evinced a legislative intent to create a property right of a contractual nature. Once there is a recognition that the statute establishing the pension plan created a property right of a contractual nature, the next logical step was to hold that the federal and state constitutions' prohibition against impairment of contracts limits the power of the state to modify those pension property rights of contractual nature. From the interaction of these various principles evolved Syllabus Point 18, Dadisman I, which follows:
The realization and protection of public employees' pension property rights is a constitutional obligation of the State. The State cannot divest the plan participants of their rights except by due process, although prospective modifications which do not run afoul of the federal or State impairment clauses are possible.
Adopting the reasoning in Dadisman I, we have no hesitancy in holding that just as the public employees' pension right is constitutionally protected, the same constitutional protection is hereby afforded the property right of a contractual nature created by the "State Teachers Retirement System" in W.Va.Code 18-7A-1 (1941) et seq.
Also, when the standards of Dadisman I are applied to the examination of the unfunded liability in the Teachers Retirement System, we hold that the inadequate funding of the Teachers Retirement System is invalid since it violates the prohibition against impairment of contractual rights contained in the federal constitution, U.S. Const. art. I, § 10, cl. 1, and in the state constitution, W.Va. Const. art. III, § 4. See Dadisman I, supra, 181 W.Va. at 789, 384 S.E.2d at 826.
Had S.B. 1000 not been enacted prior to the entry of the order by the circuit court finding inter alia that a writ of mandamus was appropriate, the circuit court would have been justified in probing: (1) whether the unfunded liability resulted in the Teachers Retirement System being actuarially unsound;[26] (2) once there was a determination that the Teachers Retirement System was actuarially unsound, then to consider the scope of the relief including what measures could be judicially mandated to return the Teachers Retirement System to actuarial soundness. See State ex rel. Dadisman v. Caperton, 186 W.Va. 627, 413 S.E.2d 684 (1991) (Dadisman II).
Indeed, following the enactment of W.Va. Code 18-9A-6a(c) (1994), the circuit court made no further findings or conclusions on the question of the unfunded liability other than the conclusory statement that the writ of mandamus is appropriate because the petitioners have a clear, legal right to the relief sought; the respondents owe a constitutional and statutory duty to the petitioners; and, there is no other adequate remedy at law.[27]
Actually, with the enactment of W.Va.Code 18-9A-6a(c) (1994), there was no longer any issue of controversial vitality relating to the measures to correct the unfunded liability of the Teachers Retirement System, and consequently *757 the circuit court should have dismissed the claim for mandamus relief since there was nothing more the respondents could or had to do to place the Teachers Retirement System in constitutional alignment. In other words, as we have stated in an earlier portion of this opinion, with the enactment of S.B. 1000 "West Virginia is now funding its teachers retirement system on an actuarially sound basis. This legislation (S.B. 1000) finally provides a definitive solution to the nagging problem of one of our state's two largest debtsthe $3 billion Unfunded Liability of its largest retirement system."[28]
Accordingly, we hold that W.Va.Code 18-9A-6a(c) (1994) represents a "valid and recognizable supervening circumstance" which commands that this Court decline to decide the issue relating to the measures to correct the unfunded liability of the Teachers Retirement System since that issue has lost its "controversial vitalityit is moot." See State v. Gleason, 404 A.2d 573, 578 (Me. 1979), cited with approval in Israel by Israel v. West Virginia Secondary Schools Activities Commission, 182 W.Va. 454, 457, 388 S.E.2d 480, 483 (1989).
Any decision in the matter sub judice relating to issues surrounding the remediation of the inadequacy of the funding of the Teachers Retirement System by this Court or the circuit court following the enactment of S.B. 1000 [W.Va.Code 18-9A-6a(c) (1994)] would avail nothing in the determination of the controversy between petitioners and respondents on this issue since there is no longer any controversy. W.Va.Code 18-9A-6a(c) (1994) has resolved any controversy that may have existed. Syllabus Point 1 in State ex rel. Lilly v. Carter, 63 W.Va. 684, 60 S.E. 873 (1908) states that:
Moot questions or abstract propositions, the decisions of which would avail nothing in the determination of controverted rights of persons or of property, are not properly cognizable by a court.
Prior to actually vacating that portion of the final order which finds that a writ of mandamus was appropriate, we must recognize and discuss that even though an issue may be technically moot, it still may be deserving of judicial resolution by meeting one or more of the following criteria:
First, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief.... Second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public.... Third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting and determinate nature, may appropriately be decided.... (Citations omitted.)
See Israel by Israel v. West Virginia Secondary Schools Activities Commission, 182 W.Va. 454, 457, 388 S.E.2d 480, 483 (1989).
Application of any or all of these exceptions to the rule of mootness do not counsel that we should find anything other than that the issue centered upon the quest to compel the respondents to correct the unfunded liability of the Teachers Retirement System is moot.[29]
First, there are no collateral consequences that justify relief that need to be addressed following the enactment of S.B. 1000.[30] Typical of this category of exceptions to the mootness *758 doctrine are: (1) those cases wherein a conviction is challenged while a person is incarcerated, but the sentence is completed and a person is released prior to a decision on the underlying challenge; and (2) those cases involving the collateral consequences of the effect of the conviction vis a vis a person's employment opportunity, availability of security clearances, or the use of the conviction to impeach character, all of which require a resolution of the initial challenge to the conviction despite the completion of the term of the sentence. No similar collateral consequences can be found in this case. See Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).
Next, so long as the state properly funds the required unfunded liability allowance as required under W.Va.Code 18-9A-6a(c) (1994), the unfunded liability issue should not be repeatedly presented to the trial court.[31]
Finally, while the problem associated with correcting the unfunded liability of the Teachers Retirement System is unquestionably of great public interest, that interest does not justify further relief beyond what has already been accomplishedthe enactment of S.B. 1000 [W.Va.Code 18-9A-6a(c) (1994)]. Neither this Court nor the circuit court could not have fashioned a better remedy than the respondents' enactment of S.B. 1000.[32]
We must add a cautionary note prior to leaving the subject of mootness and the vacating of that portion of the circuit court's order finding the writ of mandamus appropriate. While we avoid intruding any further on the problems associated with correcting the unfunded liability of the Teachers Retirement System by the application of mootness jurisprudence, we are quick to add that the lessons of Dadisman I teach that if at a time in the future there is some impairment of W.Va.Code 18-9A-6a(c) (1994) so that the actuarial soundness of the Teachers Retirement System is once again imperiled, then the issue relating to unfunded liability may be resurrected and presented to the circuit court. To that end, the protocols established by the circuit court in its April 21, 1994 order relating to the dismissal of this case without prejudice are affirmed.[33]

(B) INJUNCTIVE RELIEF

Fueling the funding inadequacy which created the actuarial unsoundness of the Teachers Retirement System was the diversion of funds dedicated for use by the Teachers Retirement System to reimburse the Public Employees Insurance Agency. The vehicles to accomplish this expropriation of pension assets were H.B. 4167, a supplemental appropriation bill, and S.B. 5, the budget bill for fiscal year 1988-89.[34]
We held in Dadisman I that all contributions, including employer contributions to a public employment retirement plan, became part of the corpus of that pension trust and are not thereafter to be considered state funds available for use for any other purpose other than that for which the moneys were entrusted. See Dadisman I, supra, 181 W.Va. at 793, 384 S.E.2d at 830.
Immediately after this civil action was instituted, the circuit court issued a temporary injunction restraining any further expropriation of funds of the Teachers Retirement *759 System for any non-pension purpose. The temporary injunction was then fused into a permanent injunction by the final order of April 21, 1994. We hold this portion of the final order that grants the temporary injunction is affirmed for the reasons recited in Syllabus Point 22 in Dadisman I:[35]
The funds in the PERS trust are an equitable estate, property held in common for the benefit of each member and retirant, and dedicated to private ends. The trust funds are not taxpayers' money. The trust funds have been earned by public employees for the benefit of the trust, thus, the funds are not public property. Any use by the Legislature of the PERS trust funds for a purpose unrelated to that for which the contributions were entrusted is an adverse modification of vested rights of the PERS participants and constitutes an expropriation.
Accordingly, and again extrapolating the language in Dadisman I, we hold that the funds in the Teacher Retirement System are an equitable estate, property held in common for the benefit of each member and retirant, and dedicated to private ends. The trust funds are not taxpayers' money. The trust funds have been earned by the plan participants for the benefit of the trust, thus, the funds are not public property. Any use by the legislature of the Teachers Retirement System trust funds for a purpose unrelated to that for which the contributions were entrusted is an adverse modification of vested rights of the Teachers Retirement System participants and constitutes an expropriation.

(C) ATTORNEYS' FEES AND EXPENSES

The circuit court found that the petitioners were entitled to attorneys' fees and expenses to be paid by all of the respondents. The lower court retained jurisdiction to resolve any disputes which may arise, presumably as to the amount of those fees and expenses and the allocation of payment among the various respondents.[36]
The petitioners assert a belief that they are entitled to an award of attorneys' fees and expenses by virtue of our decision in Nelson v. West Virginia Public Employees Insurance Board, 171 W.Va. 445, 300 S.E.2d 86 (1982), holding that attorneys' fees and expenses will be awarded in mandamus proceedings involving public officials who knowingly disregard their duty to faithfully execute the law.
The petitioners support a claim for fees and expenses by arguing that the pleadings in the case sub judice were modeled in large part upon the pleadings in Dadisman I, particularly in regard to the failure to make adequate appropriations to the Teachers Retirement System and the expropriation of funds from the Teachers Retirement System to the Public Employees Insurance Agency. This syllogism, argues the petitioners, is sufficient to justify the circuit court's finding that attorneys' fees and expenses should be awarded.
Conversely, the respondents argue with equal vigor, and also relying on Nelson that no attorneys' fees and expenses should be assessed against them since none of the public officials involved "knowingly disregarded their duty to faithfully execute the law," which is a predicate finding for any award of attorneys' fees and expenses under Nelson.
Since the circuit court's order fails to make any specific finding as to why attorneys' fees *760 and expenses were awarded, we can only speculate how the lower court determined that the respondents' conduct justified that award.
However, since we must remand this phase of the case to the Circuit Court of Kanawha County for further development, any speculation as to what prompted the circuit court to award attorneys' fees and expenses is not necessary.
We have recently had occasion to revisit the issue of the circumstances when attorneys' fees and expenses may be awarded in a mandamus proceeding against public officials, which while not departing from the standard announced in Nelson, supra, did amplify and clarify when, why and how to address this issue. In State ex rel. West Virginia Highlands Conservancy, Inc. v. West Virginia Division of Environmental Protection, 193 W.Va. 650, 458 S.E.2d 88 (1995) (Highlands II), we considered the propriety of awarding attorneys' fees and expenses to a constellation of environmental organizations who were acknowledged to "operate on low budgets and receive most of their operating expenses from public and private contributions." See Highlands II, 193 W.Va. at 655, 458 S.E.2d at 93.
The predecessor of Highlands II was State ex rel. West Virginia Highlands Conservancy, Inc. v. West Virginia Division of Environmental Protection, 191 W.Va. 719, 447 S.E.2d 920 (1994) (Highlands I). Highlands I was a technically complex case involving efforts by these same environmental organizations to compel, through mandamus relief, the West Virginia Division of Environmental Protection to address several problems relating to acid mine drainage from coal mining sites producing acid mine drainage. We granted some, but not all, of the relief requested in Highlands I.
In Highlands II, the petitioners returned to this Court seeking an award of attorneys' fees and expenses incurred in Highlands I. We specifically recognized that in Highlands I the issues involved both a knowing disregard of a mandatory duty by the Division of Environmental Protection and issues that had not been previously addressed by this Court. See Highlands II, 193 W.Va. at 654-55, 458 S.E.2d at 92-93.
We then analyzed a series of cases where: (1) Attorneys' fees and expenses had been awarded when a public official acted with deliberate intention to fail to obey the law [Nelson, supra]; (2) Attorneys' fees and expenses had been awarded when a public official disregarded a clear, nondiscretionary duty, without a deliberate intent to avoid obeying the law [Meek v. Pugh, 186 W.Va. 609, 413 S.E.2d 666 (1991) (highest scoring fire department employee not promoted) ]; and, (3) Attorneys' fees and expenses have not been awarded when a public official's duty is not clear [State ex rel. McGraw v. Zakaib, 192 W.Va. 195, 451 S.E.2d 761 (1994) (attorney general's duty in circumstances presented in the case had not been previously addressed)]. See Highlands II, 193 W.Va. at 653-54, 458 S.E.2d at 91-92.
In an effort to provide guidance to the bench and bar, we synthesized all three categories of cases into two general contexts where attorneys' fees and expenses may be awarded to a prevailing petitioner in a mandamus action as: (1) where a public official has deliberately and knowingly refused to exercise a clear, legal duty; and (2) where a public official has failed to exercise a clear, legal duty, although the failure was not the result of a decision to disregard knowingly a legal command. See Highlands II, 193 W.Va. at 654, 458 S.E.2d at 92.
In the first context, we held that a presumption exists in favor of an award of attorneys' fees and expenses unless extraordinary circumstances indicate an award would be inappropriate, then attorneys' fees and expenses would be allowed. See Highlands II, 193 W.Va. at 654, 458 S.E.2d at 92.
In the second context, we found there to be no presumption in favor of an award of attorneys' fees but provided a matrix for the Court to follow to determine whether it would be fair to leave the cost of litigation with the private litigant or impose them upon the taxpayers. We established the following factors:
(a) The relative clarity by which the legal duty was established;
(b) Whether the ruling promoted the general public interest or merely protected the private interest of the petitioner for a small group of individuals; and

*761 (c) Whether the petitioner has adequate financial resources such that it could afford to protect its own interests in court and as between the government and the petitioner.
See Highlands II, 193 W.Va. at 654, 458 S.E.2d at 92.
Since the parties and the circuit court did not have the benefit of our analysis relating to the award of attorneys' fees and expenses as expressed in Highlands II at the time the final order was entered, it is only appropriate that we remand this phase of the case to the Circuit Court of Kanawha County with directions to determine which of the categories, if any, this case belongs and thereafter, to apply the various factors assigned to the appropriate category to make findings and conclusions on the entire issue of attorneys' fees and expenses. It would be inappropriate for this Court to suggest, based upon the state of the record before us, whether this case belongs in either category, or if it belongs in any category, which category.

V

SUMMARY
By way of summary, and for the reasons recited in this opinion, the final order of the Circuit Court of Kanawha County entered July 21, 1994 is addressed upon this appeal as follows:
(1) That portion which held that a writ of mandamus is appropriate is hereby vacated and dismissed as being moot;[37]
(2) That portion which entered a permanent injunction enjoining the Teachers Retirement System from making payments to the Public Employees Insurance Agency for health insurance for retirees is hereby affirmed;
(3) That portion which finds that W.Va. Code 18-9A-6a(c) (1994) (S.B. 1000), designed to create an unfunded liability allowance, will eliminate the unfunded liability in the Teachers Retirement System over the next forty (40) years is affirmed as serving as the basis for the application of mootness jurisprudence;
(4) That portion of the order that the case be dismissed from the active docket of the circuit court, without prejudice, with leave for the petitioners to reactivate the case at any future date upon ten days' notice by filing a motion with the circuit court alleging that the state failed to properly fund the required unfunded liability allowance as required in W.Va.Code 18-9A-6a(c) (1994) is hereby affirmed;
(5) That portion of the order relating to the petitioners being entitled to their attorneys' fees and expenses to be paid by the respondents is hereby reversed and remanded with directions.
Vacated, in part; affirmed, in part; and reversed and remanded with directions, in part.
BROTHERTON, J., did not participate.
FOX, Judge, sitting by temporary assignment.
NOTES
[1] In Civil Action No. 89-C-261, Ms. Fleming filed a class action suit on behalf of herself and all other retired principals and teachers who are or were members of the West Virginia Teacher Retirement System. Ms. Fleming's suit sought the same relief as the West Virginia Education Association in their suit, Civil Action No. 89-MISC-18. These actions were consolidated by order entered June 23, 1989 and that consolidation continues in this Court for purposes of this opinion.
[2] Larry Tucker was originally named, but Earl Ray Tomblin replaced him when Mr. Tomblin became President of the State Senate.
[3] The Teachers Retirement System was established as a money purchase plan, whereby the retirement benefits consisted of member contributions, employer contributions and interest. Eventually, the pension system was changed to allow an alternate calculation based upon a percentage of the average final salary, commonly referred to as a defined benefit plan. W.Va.Code 18-7A-26 (1994).
[4] "Terminated members" refers to members who left the Teachers Retirement System membership to join the Teachers Defined Contribution Plan, which became effective in 1991. The system was established to create a savings to the state by decreasing the amount needed for the newly-hired teachers' pension matching amount. The savings is then contributed to the Teachers Retirement System's unfunded liability. W.Va.Code 18-7A-18a (1990).
[5] The Teachers Accumulation Fund is the fund in which contribution of members are to be accumulated. The amount of the contributions are dictated pursuant to W.Va.Code 18-7A-15 (1953). The contributions to the Teachers Accumulation Fund are ultimately paid out in the form of benefits through the Benefit Fund. W.Va.Code 18-7A-18(a), (c) (1993).
[6] Contributions to the Employers Accumulation Fund can best be summarized as follows: (1) Until 1988 the employer matched the employees' 6.0 percent contribution; (2) After 1988, the matching contribution continued for those employees who are not within the universe of the public school support program. For those employees affected by the public school support program, the employer contribution is calculated on the Teachers Retirement Fund Allowance under the School Aid Formula established in W.Va. Code 18-9A-6a (1994); (3) A matching contribution is also made for all employees paid out of federal special revenues contribution; and (4) Beginning July 1, 1989, contributions by the county boards of education were made under the Teachers Retirement Fund Allowance. W.Va. Code 18-7A-18(b) (1993) and W.Va.Code 18-9A-6a (1993).
[7] The Benefit Fund is the fund from which annuities are to be paid. The Benefit Fund is the vessel into which all monies from the Teachers Accumulation Fund and Employers Accumulation Fund as well as the Reserve Fund are distributed and thereafter utilized for payment of retirement or death benefits. W.Va.Code 18-7A-18(c) (1993).
[8] All gifts, bequests and interest earnings from investments are to be deposited in the Reserve Fund. Thereafter these funds are ultimately distributed to eligible participants through the Benefit Fund. W.Va.Code 18-7A-18(d) (1993).
[9] The Expense Fund is the fund from which the expenses incurred in the administration of the Teachers Retirement System are to be paid. W.Va.Code 18-7A-18(e) (1993).
[10] In its petition for temporary injunction, the West Virginia Education Association contended that the 1984 amendment to W.Va.Code 18-7A-18(c) was the seminal event from which evolved the unfunded liability crisis.
[11] In FY 1987-88, Teachers Retirement System incurred a $31 million deficit. In FY 1988-89, the Teachers Retirement System was required to expend long-term investment funds in order to meet current benefit expenditures and had requested over $19 million from the Teachers Accumulation Fund.
[12] This information was derived exclusively from the pleadings. For the most part, none of the critical allegations relating to the issues having to do with unfunded liability were denied by the respondents. However, this record does not reveal any evidentiary development in the circuit court.
[13] H.B. 4167 states, in pertinent part, that "The board shall transfer monthly to the P.E.I.B. [PEIA] from employee contribution moneys, employer contribution moneys, accumulated reserves or investment income, an amount of money sufficient to reimburse the P.E.I.B. [PEIA] for the cost of the state's share of health care claims of retired Teacher Retirement System members who have elected health care coverage through P.E.I.B. [PEIA] ..." H.B. 4167, 68th Leg., Reg. Sess., 1988 W.Va. Acts (effective Feb. 10, 1988).
[14] S.B. 5 was the budget bill for fiscal year 1988-89. S.B. 5, 68th Leg., 2nd Extraordinary Sess., 1988 W.Va. Acts (effective June 10, 1988).
[15] Brief of respondents Mr. Tomblin and Mr. Chambers, Exhibit 1, Actuarial Valuation as of July 1, 1994, p. 1.
[16] See supra note 13.
[17] See supra note 14.
[18] The majority of abuses occurred during the second administration of Governor Arch A. Moore, Jr. (January, 1985-January, 1989).
[19] This vice was alleged to be a product of the enactment of W.Va.Code 18-7A-18(c) (1993). Prior to this enactment Teachers Accumulation Fund and Employers Accumulation Fund funds should have been transferred only in limited circumstances.
[20] See supra notes 13 & 14, and accompanying text.
[21] Gaston Caperton became Governor in January, 1989.
[22] As a result of the action taken by the Governor's Task Force, an actuary was retained by the Consolidated Public Retirement Board. In a study prepared by that actuary, Scott L. Dennison, the following conclusion relating to S.B. 1000 was expressed:

Code § 18-9A-6a guarantees that the Legislature will appropriate the amount of contribution necessary to fund TRS [Teachers Retirement Fund] over a reasonable time period (40 years from July 1, 1994). West Virginia is now funding its Teachers' Retirement System on an actuarially sound basis. This legislation finally provides a definitive solution to the nagging problem of one of our state's two largest debtsthe $3 billion Unfunded Liability of its largest retirement system....
[I]n terms of 1994 dollars the Unfunded Liability is already shrinking under this new funding program.
Brief of respondents Mr. Tomblin and Mr. Chambers, Exhibit 1, Actuarial Valuation as of July 1, 1994, p. 2.
[23] There is no dispute that as of July 1, 1994, the unfunded liability in the Teachers Retirement System had increased from $1.3 billion in 1983 to $3.25 billion.
[24] There is no dispute that funds dedicated to the Teachers Retirement System were being transferred to the Public Employees Insurance Agency to pay insurance premiums for retirees' health insurance.
[25] There is no dispute that the unfunded liability rendered the Teachers Retirement System actuarially unsound.
[26] The unfunded liability did make the Teachers Retirement System actuarially unsound. See supra note 22.
[27] We are compelled to note that if the issue regarding the measures to correct the unfunded liability of the Teachers Retirement System was not obviated by the enactment of W.Va.Code 18-9A-6a(c) (1994) we would be required to comment upon the paucity of findings by the circuit court which would support the conclusion that the petitioners have a clear, legal right to the relief sought; that the respondents do owe a constitutional and statutory duty to the petitioners, and there is no other adequate remedy at law. Given our finding of mootness as discussed below, there need be no further comment as to the absence of factual and legal predicates to these various conclusions.
[28] See supra note 23 for the Brief of Respondents, Mr. Tomblin and Mr. Chambers, Exhibit 1, Actuarial Valuation as of July 1, 1994, p. 2.
[29] So there will be no misunderstanding as to the long-term effect of this opinion, we are today holding that only the issue surrounding the remedy to correct the unfunded liability is moot by virtue of the enactment of S.B. 1000 [W.Va.Code 18-9A-6a(c) (1994)]. However, as recited in Syllabus Points 1 and 2 to this opinion, since the property right created by the State Teachers Retirement System is constitutionally protected, any inadequate funding of this system is invalid as it violates the prohibition against impairment of contractual rights contained in both the state and federal constitutions.
[30] The petitioners suggest that there remain sufficient collateral issues that justify relief in the form of injunctive relief and the demand for attorneys' fees and expenses. As we will discuss in the next sections of this opinion, that portion of the circuit court's order transforming the preliminary injunction into a permanent injunction is affirmed. That portion relating to attorneys' fees is remanded with direction.
[31] See infra p. 20 discussing the ramifications of the failure to comply with W.Va.Code 18-9A-6a(c) (1994).
[32] Since we have determined that the issue designed to be resolved by way of mandamus relief is moot, there is no need to discuss any of the elements necessary to granting a writ of mandamus including whether the petitioners have a clear, legal right to the relief sought; whether the respondents have a legal duty to do the thing which the petitioners seek to compel, and whether there is an absence of another adequate remedy. See Syllabus Point 2, State ex rel. Kucera v. City of Wheeling, 153 W.Va. 538, 170 S.E.2d 367 (1969).
[33] The full text of this portion of the circuit court's final order is as follows:

This court further ORDERS that this case be dismissed from this Court's docket, without prejudice, with leave for the Petitioners to reactivate the case at any future date in the event that the State fails to properly fund the required unfunded liability allowance as currently provided for in W.Va.Code 18-9A-6a, upon ten days notice to all of the parties to this Order, by the filing of a Motion with the Court.
[34] See supra notes 13 & 14, and accompanying text.
[35] The full text of this portion of the circuit court's final order is as follows:

In H.B. 4167 and S.B. 5, the legislature required the Teachers' Retirement System to pay monthly amounts for retired teacher health insurance benefits. The Supreme Court has recognized that it is unlawful to expropriate pension funds for nonpension purposes. This Court's Injunction dated January 30, 1989 shall be modified into a Permanent Injunction and this Court ORDERS that the Teachers' Retirement System is permanently enjoined from making payments to PEIA [Public Employees Insurance Agency] for health insurance for retirees as required by H.B. 4167 and S.B. 5.
[36] The full text of this portion of the circuit court's final order is as follows:

This court further ORDERS that the Petitioners are entitled to their attorneys fees and expenses to be paid by the Respondents upon the submission of affidavits and itemized statements by each of the counsel for the Petitioners. Should any dispute arise in this regard, the matter may be submitted to this Court for further ruling.
[37] When a case is considered moot, the proper course for a court is to vacate and remand with directions to dismiss the order or opinion entered. United States v. Munsingwear, Inc., 340 U.S. 36, 39, 71 S.Ct. 104, 106-07, 95 L.Ed. 36, (1950); see also Clarke v. United States, 915 F.2d 699, 706 (D.C.Cir.1990).