458 S.E.2d 88

STATE of West Virginia ex rel. WEST VIRGINIA HIGHLANDS CONSERVANCY, INC.; West Virginia Wildlife Federation; West Virginia Council, Trout Unlimited, Inc.; and West Virginia Citizen Action Group, Relators,

v.

WEST VIRGINIA DIVISION OF ENVIRONMENTAL PROTECTION and David C. Callaghan, Director of the West Virginia Division of Environmental Protection, in His Official Capacity, Respondents.

No. 22233.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 31, 1995.

Decided April 14, 1995.

Patrick C. McGinley, Morgantown, and Phillip B. Scott, Carey, Hill & Scott, Charleston, for relators.

Darrell V. McGraw, Jr., Atty. Gen., and Joseph A. Lazell, Senior Asst. Atty. Gen., Charleston, for respondents.

CLECKLEY, Justice:

The relators in *State ex rel. West Virginia Highlands Conservancy, Inc. v. West Virginia Division of Environmental Protection,* 191 W.Va. 719, 447 S.E.2d 920 (1994) (*Highlands I*),[1] return to this Court seeking an award of attorney's fees and costs. *Highlands I* dealt with both a knowing disregard of a mandatory duty by the Division of Environmental Protection and issues that had not been previously addressed by this Court. Because the relators in this technically complex case are entitled to costs and attorney's fees for the part of their petition demonstrating a knowing disregard of a mandatory duty, we grant their request, in part, and award the relators $16,274.25, or one-half of their costs and attorney's fees.

## I.

### FACTS AND PROCEDURAL HISTORY

*Highlands I* found that W.Va.Code, 22A–3–11(g) (1990), and 38 W.Va.C.S.R. § 2–12.4(d) (1991) impose "a mandatory, nondiscretionary duty" on the West Virginia Division of Environmental Protection (DEP) "to utilize moneys from the Special Reclamation Fund, up to 25% of the annual amount, to treat acid mine drainage at bond forfeiture sites when the proceeds from forfeited bonds are less than the actual cost of reclamation." Syl., in part, *Highlands I.* When such reclamation costs exceed the amounts available from the Special Reclamation Fund (SRF), the DEP "may expend the available funds in the Special Reclamation Fund at the highest priority sites." Syl., in part, *Highlands I.*

In *Highlands I,* we considered the provisions of the federal Surface Mining Control and Reclamation Act, 30 U.S.C. 1201, *et seq.,* the West Virginia Surface Coal Mining and Reclamation Act, W.Va.Code, 22A–3–1, *et seq.,* and the applicable regulations, namely, 30 C.F.R. § 948.15, *et seq.* and 38 W.Va. C.S.R. § 2, *et seq.* We also considered DEP's December 31, 1993, report to the Legislature concerning the reclamation costs of treating acid mine drainage (AMD) which exists at certain bond forfeiture sites. *Highlands I,* 191 W.Va. at 720–21, 447 S.E.2d at 921–22.

Based on the foregoing, *Highlands I* concluded "DEP· has a mandatory, nondiscretionary duty to utilize moneys from the SRF', up to 25% of the annual amount, to treat AMD at bond forfeiture sites when the proceeds from forfeited bonds are less than the actual cost of reclamation."[2] *Highlands I,* 191 W.Va. at 724, 447 S.E.2d at 925.

In *Highlands I,* we noted that *State ex rel. Laurel Mountain/Fellowsville Area Clean Watershed Association v. Callaghan,* 187 W.Va. 266, 418 S.E.2d 580 (1992), recognized "DEP has a duty to utilize the proceeds from forfeited bonds" for reclamation and "the use of forfeited bonds to complete reclamation 'operates to eliminate acid mine drainage at levels that would violate effluent limitations....'" *Highlands I,* 191 W.Va. at 723, 447 S.E.2d at 924, *quoting Laurel Mountain,* 187 W.Va. at 270, 418 S.E.2d at 584. (Footnote omitted). However, *Laurel Mountain* "did not address the question of whether the DEP has a mandatory, nondiscretionary duty to use funds from the SRF to treat AMD."

---

1. The relators include: West Virginia Highlands Conservancy, Inc.; West Virginia Wildlife Federation; West Virginia Council, Trout Unlimited, Inc.; and West Virginia Citizen Action Group.

2. See *Highlands I,* 191 W.Va. at 722–23, 447 S.E.2d at 923–24, for a description of West Virginia's alternative to the site-specific bonding program set forth in 30 U.S.C. 1259(a) (1988). See note 17 of *Highlands I,* 191 W.Va. at 723, 447 S.E.2d at 924, for a description of the SRF, which is part of West Virginia's alternative system.

*Highlands I*, 191 W.Va. at 724, 447 S.E.2d at 925. (Footnote omitted).

The original petition in *Highlands I* alleged DEP had the following duties: a duty to reclaim fully all forfeited sites; a duty to maintain the SRF with sufficient monies to complete reclamation "contemporaneously (with bond forfeiture proceeds)" at all bond forfeiture sites; and a duty to disclose fully the scope of DEP's "legally-mandated reclamation responsibilities and the insolvency of the SRF[.]" However, the relief granted in *Highlands I* was raised in the relators' reply brief. *Highlands I*, 191 W.Va. at 720 n. 1, 447 S.E.2d at 921 n. 1.

## II.

## DISCUSSION

*Nelson v. West Virginia Public Employees Insurance Board*, 171 W.Va. 445, 451, 300 S.E.2d 86, 92 (1982), states that costs and attorney's fees will be awarded in mandamus proceedings involving public officials who "knowingly disregard their duty to faithfully execute the law." Such costs and attorney's fees are awarded because "[c]itizens should not have to resort to lawsuits to force government officials to perform their legally prescribed non-discretionary duties." 171 W.Va. at 451, 300 S.E.2d at 92. A public official's lack of intent to disregard a mandatory duty is insufficient to avoid such awards; rather, costs and attorney's fees are awarded upon evidence of a public official's "disregard for the mandatory provisions of [the] W.Va. Code[.]" 171 W.Va. at 451, 300 S.E.2d at 92. The term "willfully" in Syllabus Points 3 and 4 of *Nelson* does not require that a public officer act with a deliberate intention to "fail to obey the law";[3] rather, public officers are simply required to understand and perform their clear duties.

However, the showing of a "clear right" to a writ of mandamus "does not automatically shift a petitioner's costs and attorneys' fees onto the public officer involved. Although some disingenuous hindsight rule would be easy to apply, accurate predictions of court decisions are not a requirement for" public officers. *State ex rel. McGraw v. Zakaib*, 192 W.Va. 195, 198, 451 S.E.2d 761, 764 (1994).

When a public officer acted with a deliberate intention to fail to obey the law, costs and attorney's fees have been awarded. *See Nelson, supra* (the public employees insurance board knew the law provided for extended coverage but, without justification, allowed participation for only a limited time); *Meadows v. Lewis*, 172 W.Va. 457, 476, 307 S.E.2d 625, 644 (1983) ("commissioner's clear and systematic failure to abide by statutory mandate satisfie[d] the willfulness requirement imposed by *Nelson* "); Syl. pt. 1, *State ex rel. Lambert v. Cortellessi*, 182 W.Va. 142, 386 S.E.2d 640 (1989) (county commission arbitrarily fixed a county officer's budget without complying with W.Va.Code, 7-7-7 (1982), requirement to "give due consideration to the duties, responsibilities and work required"); *State ex rel. Bd. of Educ., County of Kanawha v. McCuskey*, 184 W.Va. 615, 403 S.E.2d 17 (1991) (state officials should promptly pay overdue monies owed from the State Department of Education for State Aid to Schools Fund); *DePond v. Gainer*, 177 W.Va. 173, 198, 351 S.E.2d 358, 384 (1986), *overruled on other grounds, Harshbarger v. Gainer*, 184 W.Va. 656, 403 S.E.2d 399 (1991) (although the matter was previously addressed in a similar case, respondent has a "perplexing hesitancy to perform legal obligations"); *State ex rel. Bd. of Educ. v. Cavendish*, 81 W.Va. 266, 268, 94 S.E. 149, 149 (1917) (Poffenbarger, J., concurring) (official disobeyed writ and "his return discloses contumacious conduct").

When a public official disregarded a clear, nondiscretionary duty, without a deliberate intent to avoid obeying the law, we have awarded costs and attorney's fees. *See Meek v. Pugh*, 186 W.Va. 609, 413 S.E.2d 666 (1991) (highest scoring fire department employee not promoted); *State ex rel. Rose v. Raleigh County Bd. of Educ.*, 179 W.Va. 275,

---

**3.** Syllabus Point 3 of *Nelson* states: "It is settled that in mandamus proceedings where a public officer willfully fails to obey the law, costs will be awarded." Syllabus Point 4 of *Nelson* states:

"In mandamus proceedings where a public officer willfully fails to obey the law, attorney fees will be awarded."

367 S.E.2d 223 (1988) (Board's argument previously raised and rejected by an earlier opinion);[4] *Hooper v. Jensen,* 174 W.Va. 643, 328 S.E.2d 519 (1985) (first refusal policy violated by failure to offer the available position); *Carpenter v. Miller,* 174 W.Va. 333, 325 S.E.2d 123 (1984) (Administrative Procedures Act does not apply to the payment of witness fees in proceedings before the Department of Mines); *Allen v. State Human Rights Comm'n,* 174 W.Va. 139, 166, 324 S.E.2d 99, 127 (1984) ("award of attorneys fees is particularly appropriate . . . given the constitutional implications of the respondents' inaction"); *Orndorff v. W.Va. Dept. of Health,* 165 W.Va. 1, 267 S.E.2d 430 (1980) (reasonable attorney's fees under W.Va.Code, 29–6–15, are available only where the civil service employee prevails and the action complained of was taken without good cause).

However, when a public official's duty is not clear, we have declined to award costs and attorney's fees. *See State ex rel. McGraw v. Zakaib, supra* (attorney general's duty in these circumstances had not been previously addressed); *Graf v. Frame,* 177 W.Va. 282, 290, 352 S.E.2d 31, 39 (1986) (relief based on "a duty to which this Court has not heretofore spoken in detail" and official "endeavored to comply in good faith on a case by case basis"); *Ney v. Workers' Compensation Fund,* 186 W.Va. 180, 411 S.E.2d 699 (1991) (attorney's fees and costs are not justified in mandamus action to challenge Commissioner's determination of onset date of permanent total disability because there was no indication he was not acting in good faith); *Queen v. Moore,* 176 W.Va. 27, 29, 340 S.E.2d 838, 840 (1986) ("the [W.Va.] Code gives no specific direction concerning the use of interest or earnings on special revenue funds").

■ In summary, we hold that attorney's fees may be awarded to a prevailing petitioner in a mandamus action in two general contexts: (1) where a public official has deliberately and knowingly refused to exercise a clear legal duty, *e.g., State ex rel. Lambert v. Cortellessi, supra; Meadows v. Lewis, supra;*

*Nelson v. West Virginia Public Employees Ins. Bd., supra;* and (2) where a public official has failed to exercise a clear legal duty, although the failure was not the result of a decision to knowingly disregard a legal command, *e.g., Meek v. Pugh, supra; Hooper v. Jensen, supra; Allen v. State Human Rights Comm'n, supra.*

■ In the first context, a presumption exists in favor of an award of attorney's fees; unless extraordinary circumstances indicate an award would be inappropriate, attorney's fees will be allowed. In the second context, there is no presumption in favor of an award of attorney's fees. Rather, the court will weigh the following factors to determine whether it would be fairer to leave the costs of litigation with the private litigant or impose them on the taxpayers: (a) the relative clarity by which the legal duty was established; (b) whether the ruling promoted the general public interest or merely protected the private interest of the petitioner or a small group of individuals; and (c) whether the petitioner has adequate financial resources such that petitioner can afford to protect his or her own interests in court and as between the government and petitioner. This case clearly falls in the latter category, and we must now apply the factors listed above to determine the appropriateness of a fee award.

■ The DEP's duty was clearly defined in both W.Va.Code, 22A–3–11(g) (1990), and 38 W.Va.C.S.R. § 2–12.4(d) (1991). The DEP maintains that after our decision in *Laurel Mountain, supra,* it has acted in good faith to treat the AMD flowing from forfeited sites; however, the record shows that such treatment has been limited to certain sites and has not utilized all available funds. Although the DEP has not shown an intention to disregard the law, the statute and the applicable regulations provide clear guidance. Similarly, we note that *Highlands I* presented important environmental issues concerning the dangers of AMD to "aquatic life" and "the natural beauty and enjoyment of the state's waters." 191 W.Va. at 720, 447

---

4. Although *Rose* appears similar to *DePond,* which is characterized as showing deliberate intent, the *Rose* opinion was based on *Marion County Bd. of Educ. v. Bonfantino,* 179 W.Va. 202, 366 S.E.2d 650 (1988), which was decided about two weeks earlier than *Rose.*

S.E.2d at 921. The interest relators seek to protect can reasonably be determined to be the "public interest." Given the technical complexity of environmental issues involving mine reclamation and the interplay among federal and state statutes and regulations, we found the parties' pleadings to be well done and useful to this Court. Finally, we observe that the relators are organizations that usually operate on low budgets and receive most of their operating expenses from public and private contributions. Applying the factors we have set forth above, we find the awarding of attorney's fees is appropriate in this case.[5]

■ We note, however, that the relators achieved only part of the relief sought and, even they acknowledge, "novel" issues were presented. Because the petition involved matters beyond DEP's clear, mandatory duty, we find the relators are entitled only to one-half of their costs and attorney's fees.[6]

Our approach to apportioning the attorney's fee award is consistent with the prior balancing test used in this State when evaluating the amount of attorney's fees that should be awarded. *See, e.g.,* Syl. pt. 4, *Aetna Cas. & Sur. Co. v. Pitrolo,* 176 W.Va. 190, 342 S.E.2d 156 (1986) (established factors to consider in awarding attorney's fees). *See also Farrar v. Hobby,* 506 U.S. 103, ——,

113 S.Ct. 566, 574–75, 121 L.Ed.2d 494, 505 (1992) (instructed courts to compare what the plaintiff actually achieved with the total relief sought in determining "the degree of success" for setting attorney's fees); *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40, 50 (1983); *Hanrahan v. Hampton,* 446 U.S. 754, 757–58, 100 S.Ct. 1987, 1989–90, 64 L.Ed.2d 670, 674 (1980).

■ Apportionment of attorney's fees is appropriate where some of the claims and efforts of the claimant were unsuccessful. Where part of the attorney's fees sought was expended on discrete efforts that achieved no appreciable advantage in the litigation, or where the claim for attorney's fees rests partly on a result to which the claimant made no significant contribution,[7] a court may consider these circumstances and apportion the attorney's fees accordingly. This holding comports with general case law regarding awards of attorney's fees and is particularly appropriate where a court is balancing the equities outlined earlier in this opinion. *See, e.g., Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940, 76 L.Ed.2d at 51 ("work on an unsuccessful claim cannot be deemed to have been 'expended in the pursuit of the ultimate result achieved.' . . . [T]herefore, no fee may be awarded for services on the unsuccessful claim." (Citation omitted)); *Sands v. Run-*

---

5. Given the nature of this underlying mandamus action and the type of defenses raised, many lawyers in West Virginia would have been reluctant to commence and prosecute this action to the end. As we stated above, the relators achieved a good result and the lawyers' accomplishment in this case was exemplary. Had the relators relied upon private-sector arrangements, they might well have been unable to obtain redress for their grievances. It is precisely for that reason that we find an attorney's fee award appropriate in this case. In doing so, we recognize the relators did not seek relief for themselves alone but also as a "private attorney general," vindicating a policy the West Virginia Legislature considered significant enough to protect. As the United States Supreme Court stated in *City of Riverside v. Rivera,* 477 U.S. 561, 575, 106 S.Ct. 2686, 2694, 91 L.Ed.2d 466, 480 (1986), " '(i)f the citizen does not have the resources, his day in court is denied him; the [legislative] . . . policy which he seeks to assert and vindicate goes unvindicated; and the entire Nation, not just the individual citizen, suffers.' 122 Cong.Rec. 33313 (1976) (remarks of Sen. Tunney)."

6. The success of the relators is important in two separate ways. Unless the relators prevail on a significant issue in the litigation, no attorney's fees should be awarded. "[P]urely technical or de minimis" success does not count, but some fee award is appropriate where the relators achieve a "material alteration of the legal relationship of the parties." *Texas State Teachers Ass'n v. Garland Independent School Dist.,* 489 U.S. 782, 792, 109 S.Ct. 1486, 1494, 103 L.Ed.2d 866, 878–79 (1989). At this point, the degree of overall success goes only to the amount of the award, not to its availability *vel non.*

7. It must be emphasized that the party applies for the fees, rather than the attorneys, and we look to the party's participation in the litigation, the positions it took, and the results it obtained over the course of the entire litigation. Where, as here, the parties in question did not prevail on all issues that were asserted and their contribution to the overall success of the case was minimal, the justness of an attorney's fee apportionment is accented.

*yon,* 28 F.3d 1323, 1333 (2nd Cir.1994) (affirmed reduction of fees for work on unsuccessful claims).

We conclude there is no inconsistency in our decision to apportion awards of attorney's fees with precedent from this Court and other jurisdictions. Of course, application of the same equitable principles will necessarily yield different results in different cases. In our view, however, apportionment is required where some of the claims and efforts of the prevailing party are unsuccessful. "[A decision] requiring apportionment, bears upon the issue of the reasonableness of the fee.[8] *Cf. Washington Dep't of Wildlife v. Stubblefield,* 739 F.Supp. 1428, 1432 (W.D.Wash.1989) ('apportionment is part of the issue of the reasonableness of the fee')."

*United States v. 27.09 Acres of Land, More or Less, Situated in Town of Harrison,* 43 F.3d 769, 774 (2nd Cir.1994).

For the above stated reasons, the relators' motion for costs and attorney's fees is granted, in part, and the respondents are ordered to pay the relators $16,274.25, or one-half of the costs and attorney's fees the relators expended in prosecuting *Highlands I.*

Motion granted, in part.

---

**8.** A rule of proportionality is but another safeguard against the possibility of an excessive attorney's fee award. It avoids a "windfall" to the prevailing party by insuring that a litigant is compensated only for the time *reasonably expended* on the litigation.