609 S.E.2d 848

**Douglas BASS, Plaintiff Below, Appellee**

**v.**

**Laura Coltelli ROSE, Defendant Below, Appellant.**

No. 31402.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 1, 2004.

Decided Nov. 12, 2004.

Dissenting Opinion of Justice Davis Nov. 19, 2004.

588

D. Michael Burke, Burke, Schultz, Harman & Jenkinson, Martinsburg, for the Appellee.

Richard L. Douglas, Suzanne Williams–McAuliffe, Martinsburg, for the Appellant.

PER CURIAM:

By way of this appeal, attorney Laura Coltelli Rose (hereinafter referred to as "Appellant") challenges the October 15, 2002, order of the Circuit Court of Berkeley County. This order relates the lower court's finding that a portion of the attorney's fee Appellant charged on a contingency fee basis for recovery of medical payment insurance benefits (hereinafter referred to as "med-pay" or "med-pay benefits") was excessive and unreasonable, and then directs Appellant to refund the same to her client, Douglas Bass (hereinafter referred to as "Appellee"). Appellant contests the ruling and argues that the lower court grounded its conclusion regarding the unreasonableness of the fee charged on an improper method of review and did not follow the law of the case doctrine and ignored the mandate of *Bass v. Coltelli–Rose*, 207 W.Va. 730, 536 S.E.2d 494 (2000) (hereinafter referred to as *"Bass II"* [1] ). Based upon review of the briefs, the pertinent record, and arguments of counsel, we reverse the decision of the lower court and remand the case for entry of an order consistent with this opinion.

## I. Factual and Procedural Background

When this case was last before this Court in *Bass II*, we were called upon to review the lower court's ruling that the provisions of the fee contract at play in this case did not go so far as to allow the agreed-upon contingency fee formula to be applied to med-pay recovery. We reversed, finding that ·the plain meaning of the contract language permitted application of the contract to amounts received for med-pay, and remanded the case "for further proceedings consistent with this opinion." 207 W.Va. at 734, 536 S.E.2d at 498. Upon receipt of the case on remand, the court below did not dismiss the case. Instead, in response to Appellee's request, an evidentiary hearing was conducted to examine the reasonableness of the fee charged.

In conducting its review of the fee, the lower court separately examined Appellant's representation in the following four activities: (1) collection of med-pay benefits through the insurance contract held by the driver of the vehicle in which Appellee was a passenger at the time of the accident; (2) collection of med-pay benefits through the insurance contract of Appellee; (3) negotiation of a liability settlement; and (4) collection from an underinsured motorist policy. This examination consisted of the lower court separately applying the twelve factors for determining the reasonableness of an attorney's fees set forth in *Aetna Casualty & Surety Company v. Pitrolo*, 176 W.Va. 190, 342 S.E.2d 156 (1986),[2] to each of the four activities. The lower court explained in its resulting October 15, 2002, order that this approach was taken because "the Supreme Court has seen fit to consider the different recoveries as separate recoveries, and considers the reasonableness of the contingency fee with reference to each factor of the recovery." The lower court also noted in the October 15 order that the overall fee charged for all of the work Appellant performed in the case would not be excessive

---

1. Our designation of *"Bass II"* is in recognition of the fact that this is the third time an issue in this case has been before us. Our first opinion involving this case was issued in 1994 as *Bass v. Coltelli*, 192 W.Va. 516, 453 S.E.2d 350, but has no direct bearing on the matters raised in this appeal.

2. The reasonableness standards applied to attorney's fees are set forth in syllabus point four of *Pitrolo* as follows:

Where attorney's fees are sought against a third party, the test of what should be considered a reasonable fee is determined not solely by the fee arrangement between the attorney and his client. The reasonableness of attorney's fees is generally based on broader factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

176 W.Va. at 191–92, 342 S.E.2d at 157. These factors are derived from Rule 1.5(a) of the West Virginia Rules of Professional Conduct.

if the basis of comparison would have been the total fee in relation to the total amount recovered.[3] Nevertheless, based on its categorical analysis, the lower court concluded that the portion of the fee charged for collection of med-pay from the driver's policy was excessive and ordered Appellant to refund the entire amount charged, $6,250,[4] plus pre- and post-judgment interest.[5] Appellant petitioned this Court for appeal of the judgment, which was granted on June 18, 2003.

## II. Standard of Review

■■■ We note generally that the matters raised are questions of law and "[w]here the issue on appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). Furthermore, a challenge is being made to the lower court's adherence to the mandate and law of the case settled on appeal in *Bass II*. "A circuit court's interpretation of a mandate of this Court and whether the circuit court complied with such mandate are questions of law that are reviewed *de novo.*" Syl. Pt. 4, *State ex rel. Frazier & Oxley, L.C. v. Cummings*, 214 W.Va. 802, 591 S.E.2d 728 (2003).

## III. Discussion

■■■ Appellant initially argues that by not dismissing the action on remand the lower court violated the law of the case doctrine. This doctrine was explained in syllabus point one of *Mullins v. Green*, 145 W.Va. 469, 115 S.E.2d 320 (1960), as follows: "The general rule is that when a question has been definitely determined by this Court its decision

is conclusive on parties, privies and courts, including this Court, upon a second appeal or writ of error and it is regarded as the law of the case." Accordingly we have held that

[u]pon remand of a case for further proceedings after a decision by this Court, the circuit court must proceed in accordance with the mandate and the law of the case as established on appeal. The trial court must implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces.

Syl. Pt. 3, *Frazier & Oxley*, 214 W.Va. at 805, 591 S.E.2d at 731.

■■■ Appellant maintains dismissal of the case on remand was warranted because the unequivocal mandate and law of the case in *Bass II* is that the contract executed between the attorney and client contemplated a contingency fee for the recovery of med-pay as well as recovery from all other sources. Thus, according to Appellant, the lower court did not faithfully apply the law of the case because it found that a portion of the contingent fee charged by Appellant was excessive for no other reason than it involved med-pay recovery.

To be clear, the quarrel with the lower court's treatment of this case on remand is not with the authority of the court to test the reasonableness of the fees charged. Rather, we are asked to determine if the manner in which the lower court conducted its review of the fees charged and the conclusion reached as a result of this review were faithful to the mandate of *Bass II*.[6]

The mandate of *Bass II* is embodied in our stated conclusion about the reach of the con-

---

3. The total fee charged was $100,138.85 or 32.7 percent of the total recovery of $306,666.52.

4. Appellant had originally charged a fee of $8,333.33, which represented 33⅓% of the $25,000 med-pay recovered from the driver's insurance policy. While this percentage was that contained in the contingency fee agreement, Appellant voluntarily reduced that fee to $6,250, or 25% of the relevant med-pay recovery after consulting with the West Virginia State Bar.

5. Appellant represents that with interest included the refund would total over $14,000.

6. We recognized in footnote four of *Phares v. Brooks*, 214 W.Va. 442, 447, 590 S.E.2d 370, 375 (2003), that there are narrowly configured exceptions to the law of the case doctrine which would allow a lower court to depart from one of our mandates. These exceptions as set forth in *U.S. v. Matthews*, 312 F.3d 652 (5th Cir.2002), as: "(1) The evidence at a subsequent trial is substantially different; (2) there has been an intervening change of law by a controlling authority; and (3) the earlier decision is clearly erroneous and would work a manifest injustice." *Id.* at 657. None of these exceptions were expressly relied upon by the lower court and we do not discern any to be present in the case at hand.

tract for services entered into by Appellant and Appellee:

> Rather than limiting the application of Rose's contingent fee to recoveries obtained from third-party tortfeasors, we interpret the plain wording of the provision in question to encompass *any recovery secured from a party who is legally obligated to compensate* Douglas Bass for the losses occasioned by the car accident in which he was involved.

*Bass II*, 207 W.Va. at 734, 536 S.E.2d at 498 (emphasis added). Thus the letter as well as the spirit of this Court's mandate in *Bass II* is that all payments, from whatever legally obligated source, received through the efforts of the attorney in furtherance of the valid contingency agreement are subject to the terms of the contingent fee agreement.

In the interim between the remand of *Bass II* and the entry of order now on appeal, this Court rendered a decision which has direct bearing on the matter before us.[7] In the case styled *Lawyer Disciplinary Board v. Morton*, 212 W.Va. 165, 569 S.E.2d 412 (2002), we specifically identified the standards for determining whether a lawyer's charge for collecting med-pay benefits is an excessive or unreasonable fee. Appellee correctly relates that *Morton* does not stand for the proposition that it is always permissible to charge a contingency fee against the recovery of med-pay. In developing this point, Appellee notes that although application of a contingency fee to med-pay is not per se unreasonable pursuant to *Morton*, an analysis of the work actually done for the client is necessary prior to determining whether the resulting fee should be sustained. While this is an accurate summation, it stops short of explaining that in *Morton* we said the reviewing court's analysis is to be conducted by looking at all of the services performed during the term of the contract. We held in *Morton* that it is incumbent upon the review-

ing body "to fairly examine all of the relevant circumstances of a lawyer's engagement and the professional services in fact rendered when considering whether compensation is excessive." *Id.* at 170, 569 S.E.2d at 417. Thereafter we specifically said "that focusing on a single component of that compensation without consideration of the entire engagement and services rendered may lead ... to an unjust conclusion ...." *Id.* Consequently, we are somewhat perplexed with the lower court's statement in its October 15, 2002, order that our "opinions which have considered the matter of the recovery of medical payment under a contingent fee contract of employment ... [require reviewing courts] to consider the different recoveries as separate recoveries, and consider[ ] the reasonableness of the contingency fee with reference to each factor of the recovery." In light of *Morton*, it is obvious that the segmented activity method the lower court employed when completing the fee review was incorrect.[8] The review of discrete activities of representation by the lower court only served to lead to the type of unjust conclusion we were attempting to prevent in *Morton*, as evidenced by the lower court's finding that the *total fee charged was not excessive* when all elements of the representation were considered. Moreover, by conducting its review based on segmented activities, the circuit court essentially decided that a portion of the contingent fee based on med-pay was entirely exempt from the mutually agreed upon contingent fee. As this conclusion appears to be contrary to our decision in *Bass II*, we believe the circuit court violated the law of the case doctrine by ordering Appellant to refund the fee for this singular activity. Accordingly, we reverse the decision of the lower court.

Despite our reversal, further proceedings in this matter are not warranted because the lower court has found as part of its

---

**7.** *Morton* was decided on May 2, 2002, and the lower court signed the order forming the basis of this appeal on October 15, 2002.

**8.** This is not to say that a reviewing court loses its discretion to conduct a review of discrete segments of an attorney's representation in situations involving apportionment of attorney's fees when some claims and efforts are unsuccessful, no appreciable advantage is achieved or no significant contribution results from such discernable activities. *See* Syl. Pt. 5, *State ex rel. West Virginia Highlands Conservancy, Inc. v. West Virginia Div. of Envtl. Protection*, 193 W.Va. 650, 458 S.E.2d 88 (1995).

order that the fee charged in relation to the entire recovery is not excessive. We agree and further note that the overall charge is actually less than the contracted contingency fee of thirty-three and one-third percent.[9] Appellant testified at the hearing and outlined the general time and effort she spent on Appellee's case, including the legal research that was required to compose a five-page letter to one of the insurers regarding the validity of recovery. The record showed that Appellant had worked on all aspects of this case for a period of two years and that she arrived at a successfully negotiated settlement without having to file a law suit. In so doing, she had to deal with two insurance companies, two separate policies of insurance and four separate coverages. Additionally, Appellant voluntarily reduced her fee for the med-pay recovery from the driver's policy, apparently recognizing to some degree the less intense effort needed to obtain that recovery.

Appellee continues to assert that recovery of med-pay benefits from the driver's policy involved no risk and, therefore, the circuit court was correct in finding and concluding that this portion of med-pay recovery was a virtual certainty and did not require the skills of an attorney. While these benefits may have been obtained with relative ease, at the time the contingency fee agreement was signed there was no certainty of recovery let alone reason to know the amount or type of services which would prove successful. We refuse to play "Monday morning quarterback." Furthermore, the seemingly effortless recovery of med-pay from the driver's insurance policy may well have been facilitated by the involvement of an attorney in this case.

Be that as it may, Appellee's argument points to a concern we have with Appellant's testimony about maintaining time records. Appellant indicated that she typically does not keep time records for cases in which the work she performs is contingency based in terms of fee structure. It may be that many lawyers who do work under a contingent fee contract do not keep time records. It should be obvious from this case that keeping good time records would be the more prudent course. The burden of proof is always upon the attorney to show the reasonableness of the fees charged. Syl. Pt. 2, *Committee on Legal Ethics of West Virginia State Bar v. Tatterson,* 177 W.Va. 356, 352 S.E.2d 107 (1986). The same burden to prove reasonableness remains with the attorney under any fee structure. Attorneys who fail to effectively document their efforts on behalf of a client run the risk of being unable to convince a reviewing court, based on their word alone, of the reasonableness of the fee charged or, in cases where it applies, the full and proper value of fees to be awarded on a quantum meruit basis.

## IV. Conclusion

Based on the foregoing reasons, we set aside that portion of the October 15, 2002, order of the Circuit Court of Berkeley County directing refund of attorney fees. As the lower court has heretofore determined and declared that the fee charged was not unreasonable or excessive when the entire representation is considered in light of the full recovery obtained, the case is remanded for the entry of an order of dismissal.

Reversed and remanded.

Justice DAVIS dissents and files a dissenting opinion in which Chief Justice MAYNARD joins.

DAVIS, J., dissenting:

(Filed Nov. 19, 2004)

The majority's opinion permits attorneys to collect fees from their clients for performing absolutely no services on behalf of those clients. I disagree with any scheme that allows an attorney to collect money when he or she has done nothing to earn that money. Let me be clear that my dissent is not a criticism of contingent fees. I find absolutely no fault with contingent fees in general. As I have said before, "my dispute with the majority opinion is that it permits attorneys in this state to collect fees from their clients when they have performed absolutely no services on behalf of those clients." *Lawyer*

9.  *See supra* n. 3.

*Disciplinary Bd. v. Morton,* 212 W.Va. 165, 171, 569 S.E.2d 412, 418 (2002) (per curiam) (Davis, J., dissenting). Therefore, I respectfully dissent.

When this case was previously before this Court on the issue of the application of the contingency fee contract to recovery of medical pay benefits, I stated the following:

> The circuit court restricted the ... language [of the contingency fee contract] to mean that Rose could recover only the fees from the person who struck the car in which Mr. Bass was riding when he was injured. The majority opinion correctly found that such an interpretation of the contract was wrong. In the context of the claim against Mr. Weakley's insurer, there is no ambiguity in the contract. It is a well settled principle of law that "[w]here the terms of a contract are clear and unambiguous, they must be applied and not construed." Syllabus point 2, *Bethlehem Mines Corp. v. Haden,* 153 W.Va. 721, 172 S.E.2d 126 (1969).
>
> Weakley was the driver of the car in which Mr. Bass was a passenger when he sustained his injuries. Neither Mr. Bass nor his mother, Mrs. Bass, owned the vehicle driven by Weakley. While the record in this case does not disclose whether or not a separate action was initiated against Weakley, it is clear that a potential claim was present. In other words, Weakley was a potential adversary. In this posture, Rose's contract with the Bass family clearly entitled her to receive one-third of any recovery obtained from Weakley.

*Bass v. Coltelli–Rose,* 207 W.Va. 730, 734–35, 536 S.E.2d 494, 498–99 (2000) (per curiam) (Davis, J., concurring and dissenting). Based on the facts before the Court at that time, I believed Ms. Rose was entitled to a fee for obtaining medical pay benefits under the Weakley policy based upon the assumption that she had performed legal services to collect those medical payments.[1]

On remand to the circuit court, the facts were more fully developed and it now is clear that Ms. Rose was not entitled to charge Mr. Bass a fee for collecting medical pay benefits under the Weakley policy. The circuit court found that "State Farm had originally contacted ... [a] parent of Douglas Bass,[2] advising her of the fact that Douglas was entitled to have his medical bills paid by State Farm[.]" (Footnote added). Because of this fact and because the medical bills were promptly paid, the court opined that "[m]aking copies of these medical bills from the file and forwarding them under a cover letter to State Farm was a matter which could have been handled by Laura Rose's staff, and probably did not take much time." Moreover, the circuit court found that "the obtaining of the $25,000.00 medical payment due under the Weakley policy to Douglas Bass was a certainty, not an uncertainty, and was something which did not even require the

---

1. I also thought that Ms. Rose was not entitled to receive a fee for the collection of the medical pay benefits under Mr. Bass's own policy because I believed that no legal services were needed to gain those payments. The facts developed on remand reveal that I was wrong in condemning application of a contingency fee to the payments collected under the Bass policy. The circuit court found that "State Farm originally refused to pay this claim. Laura Rose's letter to State Farm ... is four pages long and is a very well written brief as to why State Farm [cannot] enforce the 'anti-stacking' provisions of its insurance policies as they apply to medical payment provisions[.]" Moreover, the circuit court found that "[t]his was definitely a contingency fee matter. There was no assurance ... that the 'anti-stacking' provisions of the policies would not be enforceable."

Thus, the now fully developed facts indicate that I initially was incorrect in my decision as to which policies would properly be the subject of a contingent fee. "In these circumstances the temptation is strong to embark upon a lengthy personal apologia." *Boys Mkts. Inc. v. Retail Clerks Union, Local 770,* 398 U.S. 235, 255, 90 S.Ct. 1583, 1595, 26 L.Ed.2d 199, 213 (1970) (Stewart, J., concurring). The words of Justice Frankfurter provide me some comfort and instruction: "Wisdom too often never comes, and so one ought not to reject it merely because it comes late." *Henslee v. Union Planters Nat'l Bank & Trust Co.,* 335 U.S. 595, 600, 69 S.Ct. 290, 293, 93 L.Ed. 259, 264 (1949) (per curiam) (Frankfurter, J., dissenting). Therefore, while my decision has changed as to whether the Weakley policy and Mr. Bass's policy were properly considered under the contingent fee contract, my reasoning remains the same that no attorney should receive compensation for performing no legal services.

2. Douglas Bass was a minor when the accident occurred.

skill of an attorney. The fee charged ... was still excessive and is disapproved."

We have previously held "[i]n the absence of any real risk, an attorney's purportedly contingent fee which is grossly disproportionate to the amount of work required is a 'clearly excessive fee' within the meaning of ... [the rules]." *Comm. on Legal Ethics of the West Virginia State Bar v. Tatterson,* 177 W.Va. 356, 363, 352 S.E.2d 107, 114 (1986).[3] Ms. Rose charged and received an unreasonable and excessive amount of attorney's fees for collecting medical payment benefits which were never disputed and which were paid by the insurer without controversy.

Ms. Rose was not hired to merely receive checks from State Farm on behalf of Mr. Bass. Thus, she should not be compensated for performing a service which required no skill and limited time. No legal services were necessary to obtain the medical pay benefits portion under the Weakley policy. The majority's opinion allows Ms. Rose to collect a fee of $6,250.00, for copying medical bills and submitting them with a cover letter to the insurance company, a task which was probably relegated to an office staff member. No member of the legal community should be allowed to accept fees when no work was performed justifying those fees, and there is no uncertainty with respect to the recovery of the medical pay benefits. Therefore, I cannot agree with the majority opinion in that it permits an attorney to take fees from clients when no legal services were performed.

For the reasons stated, I dissent. I am authorized to state that Chief Justice MAYNARD joins me in this dissenting opinion.

---

**3.** In *Tatterson,* the Court found that the lawyer improperly charged a contingent fee when the only service provided was assistance in filling out life insurance proceeds forms and the insurance company never disputed payment.