No. 13-0037 - *West Virginia Regional Jail and Correctional Facility Authority v. A.B.*

**FILED**

**October 31, 2014**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

Davis, C.J., dissenting:

While confined at the Southern Regional Jail, the plaintiff alleged that she was raped on seventeen (17) different occasions by a correctional officer. The plaintiff sued the rapist and his employer, the West Virginia Regional Jail and Correctional Facility Authority ("the Regional Jail"). The Regional Jail moved for summary judgment on the grounds of qualified immunity. The trial court denied the motion, and the Regional Jail appealed. The majority opinion reversed after determining, in essence, that the Regional Jail does not have a duty to protect female prisoners from being raped by the correctional officers it employs. The majority opinion also tersely rejected the circuit court's determination that the special relationship doctrine precluded summary judgment. For the reasons set out below, I dissent.

### A.  Continued Denial of Justice on Rehearing

"I have noted on several occasions that '[w]isdom too often never comes, and so one ought not to reject it merely because it comes late.'" *Savilla v. Speedway Superamerica*, LLC, 219 W. Va. 758, 773, 639 S.E.2d 850, 865 (2006) (Davis, C.J., dissenting), *overruled by Murphy v. Eastern Am. Energy Corp*., 224 W. Va. 95, 680 S.E.2d 110 (2009). *See also Bass v. Rose*, 216 W. Va. 587, 593 n.1, 609 S.E.2d 848, 854 n.1 (2004)

1

(Davis, J. dissenting); *State v. Harris*, 207 W. Va. 275, 281 n.1, 531 S.E.2d 340, 346 n.1 (2000) (Davis, J., concurring). The majority opinion had a golden opportunity in rehearing this case: The opportunity to correct a grave injustice done to the victim and to our law on governmental immunity. Unfortunately, the majority instead chose to ignore the reality of the injustice it has unleashed.

The basic issue in this case and the reason for my dissent has not changed. This case is not about whether the correctional officer who raped the plaintiff was acting outside the scope of his employment. Common sense dictates that the Regional Jail did not hire the correction officer to rape the plaintiff and other inmates as part of his job duties. The focus of this case was on what the Regional Jail did to assure the reasonable safety of the plaintiff *from being raped*. If one reads the majority opinion line by line, and even in between the lines, you will find no discussion of what practical measures the Regional Jail used to monitor the interaction between male correctional officers and female prisoners. The basis for liability against the Regional Jail is its failure to provide even the most basic monitoring procedures. Thus, the majority's failure to discuss the same is simply inexcusable.

In a recent newspaper article it was reported that the Regional Jail began compiling reports of sexual assault in 2013, after the new federal Prison Rape Elimination

2

Act standards took effect.[1]  According to the article, data was released going back to 2008 showing that reports of sexual assaults in West Virginia prisons increased from twenty-five allegations in 2008 to 229 allegations in 2013.  The data also showed that there were thirty-six reported allegations of staff sexual misconduct in 2013 and fifty allegations of staff sexual misconduct in 2014.  Erin Beck, *More Inmates Reporting Sexual Assault in W.Va.*, Charleston Gazette (October 26, 2014).[2]  Under the majority opinion, these numbers mean absolutely nothing, because the Regional Jail can never be held accountable for its failure to provide basic protections to women behind bars.

Other than this new section, the remainder of my dissent is unchanged from the its previous filing.  The new majority opinion has added nothing to alter the basic principles of my dissent.

### B.  Qualified Immunity

In order to find that the Regional Jail is immune from liability when female inmates are raped with impunity by correctional officials, the majority opinion recast our law

---

[1]The Prison Rape Elimination Act "is intended to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue." *Moorman v. Herrington*, 2009 WL 2020669, at *2 (W.D. Ky.  2009).  *See* 42 U.S.C. §§ 15601 *et seq.* (2003).

[2]This article may be found online at: http://www.wvgazette.com/article/20141026/GZ01/141029446/1101.

3

on qualified immunity in such a manner as to make it now virtually impossible for any state agency, not just the Regional Jail, to ever be held accountable for tortious conduct committed by employees within the scope of their employment. I do not make this accusation lightly. The decision in *Heckenlaible v. Virginia Peninsula Regional Jail Authority*, 491 F. Supp. 2d 544 (E.D. Va. 2007), helps to illustrate the true impact of the majority opinion.

Before examining *Heckenlaible*, it is appropriate to review the constitutionally recognized "liberty interest in the integrity of the human body." *Farrell, ex rel. Farrell v. Transylvania Cnty. Bd. of Educ.*, 682 S.E.2d 224, 230 (N.C. Ct. App. 2009). "The liberty interest protected by substantive due process encompasses the right to be free from state intrusion upon one's bodily security and personal privacy. State action which 'shocks the conscience' or runs counter to 'certain decencies of civilized conduct' violates the due process clause." *Jane Doe A v. Special Sch. Dist. of St. Louis Cnty.*, 682 F. Supp. 451, 457 (E.D. Mo. 1988). "[C]ourts uniformly hold that the right to be free from sexual abuse–the logical extension of the right to bodily security-is well established." *Arbaugh v. Board of Educ., County of Pendleton*, 329 F. Supp. 2d 762, 770 (N.D. W. Va. 2004). *Accord Doe ex rel. Doe v. City of Roseville*, 296 F.3d 431, 435, 438 (6th Cir. 2002); *Doe v. Gooden*, 214 F.3d 952, 956 (8th Cir. 2000); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 451 (5th Cir.1994); *Hinkley v. Baker*, 122 F. Supp. 2d 48, 51 (D. Me. 2000). Indeed, the United States Supreme Court has commented that "[a]mong the historic liberties so protected [by the Fifth

and Fourteenth Amendments] was a right to be free from, and to obtain judicial relief for, unjustified intrusions on personal security." *Ingraham v. Wright*, 430 U.S. 651, 673, 97 S. Ct. 1401, 1413, 51 L. Ed. 2d 711 (1977). In the context of corporal punishment of children by school officials, the Fourth Circuit summarized the constitutional protection afforded the human body in *Hall v. Tawney*, 621 F.2d 607 (4th Cir. 1980):

> [Citizens have] the right to be free of state intrusions into realms of personal privacy and bodily security through means so brutal, demeaning, and harmful as literally to shock the conscience of a court. The existence of this right to ultimate bodily security the most fundamental aspect of personal privacy is unmistakably established in our constitutional decisions as an attribute of the ordered liberty that is the concern of substantive due process. Numerous cases in a variety of contexts recognize it as a last line of defense against those literally outrageous abuses of official power whose very variety makes formulation of a more precise standard impossible. Clearly recognized in persons charged with or suspected of crime and in the custody of police officers[.]

*Hall*, 621 F.2d at 613. In the instant case, the plaintiff's constitutional right to be free "from invasion of her personal security through sexual abuse, was well-established at the time the assaults upon her occurred." *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 726 (3rd Cir. 1989). As a result of this well recognized constitutional protection, the majority opinion should have applied the analysis and reasoning in *Heckenlaible* in order to affirm the circuit court's decision in the instant case.

The plaintiff in *Heckenlaible* sued a correctional officer and his employer,

5

Virginia Peninsula Regional Jail Authority, for sexual assault while she was confined in jail. The defendant, Peninsula Regional Jail, moved for summary judgment on several grounds, including the contention that it could not be held liable under the theory of respondent superior.[3] The federal district court disagreed with the defendant as follows:

> [A] jury issue may exist as to whether an employee's wrongful act occurred within the scope of employment notwithstanding the fact that the employee's act violated an employer's rules or directives. Ultimately, the issue for the court to resolve is whether the service itself, in which the tortious act was done, was within the ordinary course of [the employer's] business.
>
> . . . .
>
> [T]his was not a case where a wrongful act occurred in the workplace merely because an employee was in a particular location at a particular time as a result of his employment. Steele's duties as a correctional officer required him to observe inmates in the shower, and the alleged sexual assault occurred after he observed Heckenlaible showering and during a "cell search" thereafter. Steele's impulse to have sexual contact with Heckenlaible may well have arisen, at least in part, from the fact that he was required to view Heckenlaible while she was unclothed in the shower. In light of these circumstances, a reasonable juror could conclude that the alleged sexual assault arose out of Steele's performance of his duties.
>
> Moreover, viewing the facts in the light most favorable to Heckenlaible, Steele was actively engaged in the performance of his job duties, which included supervising Heckenlaible and the other inmates in the medical unit, when the wrongful act occurred. Steele was supervising Heckenlaible when he accompanied her to the shower, looked at her while she showered, and returned her to her cell afterwards. In addition,

---

[3]Other issues were raised that are not relevant.

6

he ultimately entered her cell on the pretense of conducting a cell search, and cell searches are also among the duties of a correctional officer. It follows that a reasonable juror could conclude that when the wrongful act occurred, Steele was engaged in a service, namely, the supervision of Heckenlaible, that was within the ordinary course of the Jail Authority's business. A reasonable juror could reach this conclusion notwithstanding the fact that Steele violated the Jail Authority's policies when he had a sexual encounter with Heckenlaible.

Furthermore, the instant case reflects a situation where special circumstances related to employment facilitated the alleged intentional tort. Steele could not have reached Heckenlaible within the confines of her cell were it not for his employment with the Jail Authority. Also, in announcing that he was entering her cell to conduct a search, Steele arguably used the authority of his office to accomplish the wrongful act. Such facts weigh strongly against resolving the scope of employment issue, as a matter of law, in favor of the Jail Authority. In sum, having carefully reviewed the relevant case law and studied the arguments set forth by the parties, this court concludes, for the several reasons discussed above, that whether Steele was acting within the scope of his employment when he allegedly assaulted Heckenlaible is an issue for the jury to resolve.

*Heckenlaible*, 491 F. Supp. 2d at 549-52 (internal quotations and citations omitted).

The majority opinion summarily rejected *Heckenlaible* on the grounds that Virginia did not extend qualified immunity to itself. The majority opinion's rejection of *Heckenlaible* is misguided. The fact that Virginia did not extend qualified immunity under the facts of *Heckenlaible* was irrelevant. The most important issue addressed in *Heckenlaible* and completely omitted from the majority opinion was an understanding of how to analyze

7

"scope of employment." In other words, both Virginia and West Virginia require that a state employee's conduct fall within the scope of employment in order to extend liability to the State.

Under *Heckenlaible*, the mere fact that an employee's wrongful conduct violated an employer's rules or directives does not automatically mean that the employee's wrongful act occurred outside the scope of his/her employment. Instead, *Heckenlaible* requires the fact finder to determine "whether the service itself, in which the tortious act was done, was within the ordinary course of [the employer's] business." *Heckenlaible*, 491 F. Supp. 2d at 549-52 (internal quotations and citations omitted). Stated simplistically, the issue for a jury is whether "the employee's wrongful conduct was related to the nature of the employment." *Blair v. Defender Servs., Inc.*, 386 F.3d 623, 628 (4th Cir. 2004).

Although the majority opinion repeatedly mentions that proof is required to show that the wrongful conduct was committed during the scope of employment, the opinion totally failed to provide any analysis of how to apply the phrase "scope of employment." It is the absence of such analysis that makes the majority opinion dangerous. The majority opinion stands for the proposition that any wrongful act not authorized by a State agency will immunize the State from liability. This new standard can never be overcome by a plaintiff, because no State agency ever authorizes wrongful conduct.

8

To add insult to injury, the majority opinion also has concluded specifically that liability cannot be imposed on the Regional Jail merely because it did not have any regulations designed to protect female inmates from being raped. According to the majority opinion, such regulations "easily fall within the category of 'discretionary' governmental functions." The majority opinion requires a rape victim to specifically point to "a 'clearly established' right or law with respect to . . . supervision[.]" In the final analysis, under the majority opinion, the Regional Jail simply has to bury its head in the sand and never promulgate any regulation designed to protect the bodily integrity of female inmates to ensure its continued impunity from liability.

"Although mere failure to supervise is not a basis for liability under [the law], liability will result if delinquent supervision is so severe as to amount to gross negligence or deliberate indifference to constitutional violations." *Holland v. Breen*, 623 F. Supp. 284, 290 (D. Mass. 1985) (internal quotations and citation omitted). The majority opinion promotes and rewards "gross negligence and deliberate indifference" to the constitutional right of female inmates to be free of sexual assaults. But, the State cannot be granted absolute immunity merely because no regulation was violated when its employee raped an inmate seventeen times. Just what will it take to protect women from such assaults? Simply put, the Regional Jail was grossly negligent in not having regulations in place that would have protected the plaintiff from being alone with any male correctional officer on seventeen

separate occasions.

Finally, I wish to point out that the decision in *J.H. v. West Virginia Division of Rehabilitation Services*, 224 W. Va. 147, 680 S.E.2d 392 (2009), supports the trial court's decision in the instant case. In *J.H.,* the plaintiff was a resident in a rehabilitation center operated by a State agency. While at the facility, the plaintiff was raped by another resident living at the facility. The plaintiff sued the State agency on various grounds of negligence, including negligent supervision and failure to provide adequate protection. The State moved to dismiss the case on the grounds of qualified immunity.[4] The circuit court granted the State's motion. This Court, in summary fashion, found that qualified immunity did not exist:

> The Division argues that because qualified immunity protects governmental entities from tort liability for alleged negligence in the exercise of "discretionary" functions, the Appellant's Amended Complaint alleging mere negligence rather than a violation of any clearly established law failed to state a claim against the Division for which relief could be granted.
>
> . . . .
>
> [T]he first issue that must be determined in analyzing the issue of qualified immunity and the applicability of this immunity to a State agency is whether the State's insurance policy expressly waives common-law immunity for tort liability. In the instant matter, no such waiver exists. Thus, the second inquiry is whether the State entity was exercising a legislative or

---

[4]The State also sought dismissal under the public duty doctrine, which I will discuss in the next section of my dissent.

judicial function or an administrative function involving the determination of a fundamental governmental policy. There are no allegations made by the Appellant of any type of legislative, judicial, or administrative functions involving the determination of a fundamental governmental policy, which are the types of functions susceptible to the application of qualified immunity. Thus, the doctrine of qualified immunity does not preclude this claim.

*J.H.*, 224 W. Va. at 156-57, 680 S.E.2d at 401-02 (citation omitted). Even though *J.H.* summarily addressed the issue of qualified immunity, the opinion nonetheless should have been followed because it was factually similar to the instant case. In both cases, the victims were raped. At the time of the rapes, both victims were under the care and supervision of the State. In both cases, the plaintiffs alleged that the State failed to properly supervise their assailants and failed to provide adequate protection to safeguard them from being raped. The decision in *J.H.* correctly found this set of facts was sufficient to defeat a claim of qualified immunity. In the instant case, the majority opinion has taken these same facts and concluded that the State did not have a duty to protect the plaintiff from being raped by its employee.

### C. *Special Relationship Exception to the Public Duty Doctrine*

The final issue I wish to address involves the majority opinion's terse treatment of the special relationship exception to the public duty doctrine.[5] We have held that, under the public duty doctrine, "a local governmental entity's liability for nondiscretionary . . .

_____

[5]The special relationship exception is also called the special duty doctrine.

functions may not be predicated upon the breach of a general duty owed to the public as a whole." *Walker v. Meadows*, 206 W. Va. 78, 83, 521 S.E.2d 801, 806 (1999) (internal quotations and citation omitted). The public duty doctrine is different from the principle of governmental immunity. That is, the public duty doctrine "does not rest squarely on the principle of governmental immunity, but rests on the principle that recovery may be had for negligence only if a duty has been breached which was owed to the particular person seeking recovery." *Parkulo v. West Virginia Bd. of Prob. & Parole*, 199 W. Va. 161, 172, 483 S.E.2d 507, 518 (1996). If the public duty doctrine applies, there is no duty owed by the government and therefore no need to inquire as to the existence of governmental immunity. However, the public duty doctrine may be defeated under the special relationship exception. This Court set forth the following test for determining when the "special relationship" exception to the public duty doctrine gives rise to a cause of action:

> To establish that a special relationship exists between a local governmental entity and an individual, which is the basis for a special duty of care owed to such individual, the following elements must be shown: (1) an assumption by the local governmental entity, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the local governmental entity's agents that inaction could lead to harm; (3) some form of direct contact between the local governmental entity's agents and the injured party; and (4) that party's justifiable reliance on the local governmental entity's affirmative undertaking.

Syl. pt. 2, *Wolfe v. City of Wheeling*, 182 W. Va. 253, 387 S.E.2d 307 (1989).

12

Turning now to the instant case, the first matter I am compelled to address involves the majority opinion's assertion that the plaintiff injected the issue of the public duty doctrine and special relationship exception into this appeal. The record clearly shows that the Regional Jail injected this issue as a specific assignment of error.[6] Consequently, the plaintiff had a right to respond to the assignment of error. Moreover, the Regional Jail addressed the issue as an assignment of error because the trial court ruled that the special relationship exception applied in this case.

The second issue I must address concerns the majority opinion's unsupported assertion that the special relationship exception cannot be invoked until a government entity raises the public duty doctrine as a defense. Specifically, the majority opinion states that the record does not show that the Regional Jail "assert[ed] the public duty doctrine as a defense to liability, to which respondent could then properly invoke the special duty exception." This erroneous limitation on the invocation of the special relationship exception was compounded by the majority opinion's unsupported assertion that the special relationship exception is not "a stand-alone basis of liability."[7]

---

[6]The Regional Jail entitled the assignment of error as follows: "The Trial Court Erred By Finding A Special Duty Existed Between Petitioner And Respondent."

[7]I will note that "[i]f immunity exists . . . no inquiry into the public duty doctrine and its special relationship exception is necessary." *Moats v. Preston Cnty. Comm'n.*, 206 W. Va. 8, 14, 521 S.E.2d 180, 186 (1999).

13

Our prior cases have clearly held that the special relationship "*exception gives rise to a cause of action in certain situations* when there is a special relationship between an individual and a governmental entity." *Holsten v. Massey*, 200 W. Va. 775, 780-81, 490 S.E.2d 864, 869-70 (1997) (emphasis added). This Court held in syllabus point 3 of *Benson v. Kutsch*, 181 W. Va. 1, 380 S.E.2d 36 (1989), that "[i]f a special relationship exists between a local governmental entity and an individual which gives rise to a duty to such individual, and the duty is breached causing injuries, then a suit may be maintained against such entity." The decision in *J.H.*, discussed *supra*, illustrates the application of the special relationship exception.

As previously pointed out, the plaintiff in *J.H.* was a resident in a State rehabilitation center when he was raped by another resident living at the facility. After the plaintiff filed the action, the State moved to dismiss the action under several defenses that included the public duty doctrine. The circuit court found that the public duty doctrine prevented imposition of liability against the State. This Court reversed the circuit court's ruling and reasoned as follows:

> [W]e direct our attention to the pivotal issue in this matter, which is the public duty doctrine and whether the special relationship exception applies in this case. Generally, the duty imposed upon a governmental entity is one owed to the general public, and unless the injured party can demonstrate that some special relationship existed between the injured person and the allegedly negligent entity, the claim is barred. As the Court has previously recognized the public duty doctrine is a principle

14

independent of the doctrine of governmental immunity, although in practice it achieves much the same result. The Appellant maintains that as a resident of the attendant care unit at the Rehabilitation Center, he had a special relationship with the Division beyond the relationship with the general public. The Appellant maintains that the Division had full knowledge of the Appellant's compromised mobility and had knowledge of Jeff Bell's prior sexual predator acts at the Rehabilitation Center. The Appellant also maintains that at the time of the alleged molestation, the Division allowed Mr. Bell private access to the Appellant's bedroom.

Contrariwise, the Division argues that the public duty doctrine only applies to an alleged breach of a nondiscretionary duty to provide fire or police or other public safety protection to an individual, and the Division maintains that it has no nondiscretionary statutory duty to provide police, fire, or other public safety protection to disabled individuals or the general public. The Division, therefore, asserts that the Appellant failed to allege operative facts that would support the application of the public duty doctrine or its special relationship exception to avoid dismissal of his negligence claims under the doctrine of qualified immunity.

First, it is important to note that the public duty doctrine is not an immunity; but, rests on the principle that recovery may be had for negligence only if a duty has been breached which was owed to the particular person seeking recovery.

. . . .

Finally, this Court previously held that . . . the question of whether a special duty arises to protect an individual from a State governmental entity's negligence is ordinarily a question of fact for the trier of facts.

In the instant case, the Court concludes that the circuit court erred in granting the Division's Motion to Dismiss. A *de novo* review of the allegations contained in the Appellant's Amended Complaint reflects that sufficient allegations are

present to allow the Appellant's claims to go forward against the Division. It is for a jury to determine, under appropriate instruction of law, whether a special duty arises to protect the Appellant from the Division's alleged negligence. We, therefore, reverse the decision of the circuit court and remand this case for reinstatement of the Appellant's claims based upon the allegations of a special relationship and a special duty.

*J.H.*, 224 W. Va. at 158-59, 680 S.E.2d at 403-04 (internal quotations and citations omitted).

Clearly the decision in *J.H.* recognizes a claim may be maintained against the State under the special relationship exception. Therefore it was legally wrong for the majority opinion to suggest otherwise. *See McCormick v. West Virginia Dep't. of Pub. Safety*, 202 W. Va. 189, 503 S.E.2d 502 (1998) (holding that a jury could find that the Department of Corrections owed a duty to a social worker killed in her apartment by an inmate she once counseled in a prison).

Based upon the foregoing, I dissent.